## SLADE et al. v. BENNETT.

(Supreme Court, Appellate Division, First Department.    July 13, 1909.)

1. BANKS AND BANKING (§ 270*)—NATIONAL BANKS—USURIOUS TRANSACTIONS
—EFFECT.

Under Rev. St. U. S. §§ 5197, 5198 (U. S. Comp. St. 1901, p. 3493), providing that knowingly charging usurious interest forfeits all interest, a national bank holding for value and innocently a bond and mortgage tainted with usury may recover the principal due.

[Ed. Note.—For other cases,. see Banks and Banking, Cent. Dig. §§ 1023–1041; Dec. Dig. § 270.*]

2. BANKS AND BANKING (§ 261*)— ASSIGNMENT OF REAL ESTATE MORTGAGE —
ENFORCEMENT.

A national bank may enforce a real estate mortgage assigned to an employé for its benefit, though it is subject to liability to the federal government for exceeding its powers.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 993; Dec. Dig. § 261.*]

3. LIMITATION OF ACTIONS (§ 22*)—SEALED INSTRUMENTS.

A recital in an unsealed instrument that it is under seal makes the instrument a sealed one for the purposes of the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 1001; Dec. Dig. § 22.*]

4. EVIDENCE (§ 459*)—PAROL EVIDENCE—SEALED INSTRUMENTS.

A recital in an unsealed instrument that it is under seal does not make the instrument a sealed one within the rule forbidding the reception of parol evidence showing the parties in interest, where the evidence is offered in behalf of a third person claiming an interest, and parol evidence is admissible to show that an unsealed assignment of a mortgage to an employé of a national bank was for the benefit of the bank.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1906–1910, 2109–2114; Dec. Dig. § 459.*]

5. USURY (§ 110*)—EQUITABLE RELIEF—CANCELLATION—PARTIES.

In a suit to cancel a bond and mortgage on the ground of usury brought against an assignee holding the same for his employer as collateral security for a debt due to the employer from the assignor, the trustee in bankruptcy of the assignor is a necessary party.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 270, 271; Dec. Dig. § 110.*]

6. BANKS AND BANKING (§ 262*)—NATIONAL BANKS—ASSIGNMENTS OF SECURITIES AS COLLATERAL—RIGHTS ACQUIRED.

The discount clerk of a national bank has no authority by virtue of his office or his agency resulting from the assignment to him of a bond and mortgage for the use of the bank to secure a debt due to the bank to bind the bank by a stipulation in a suit to which it is not a party, to the effect that he was the holder and owner of the bond and mortgage, where he had executed an unrecorded assignment thereof to the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1003; Dec. Dig. § 262.*]

7. USURY (§ 110*)—CANCELLATION OF INSTRUMENTS—PARTIES.

Where, in a suit to cancel a bond and mortgage on the ground of usury, it appeared that the bond and mortgage had been assigned to an employé of a national bank as collateral security for a debt due to the bank from the assignor that the assignee had executed an unrecorded assignment to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the bank, and that the assignor knew the bank was the real party to the interest, the bank was a necessary party.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 270, 271; Dec. Dig. § 110.*]

McLaughlin, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Howard Slade and another against Elbert A. Bennett and another. From a judgment for plaintiffs, defendant Elbert A. Bennett appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

Joseph M. Hartfield, for appellant.

Charles L. Craig (Henry Siegrist, Jr., on the brief), for respondents.

LAUGHLIN, J. This is a suit in equity to cancel a bond executed by the plaintiffs to the defendant Frank Squier on the 1st day of December, 1906, to secure the payment of the sum of $12,600, and a mortgage to secure the payment of the indebtedness represented by the bond bearing even date therewith upon certain real estate in Block Island, R. I., executed by the same parties and acknowledged on the same day as the bond. Both instruments were duly recorded in the records of mortgages of real estate in the town of New Shoreham, Newport county, R. I., in Book 3 at page 392. The plaintiffs not only demand a cancellation of the instruments, but that they be discharged of record, on the theory that they constitute a cloud on the title to the premises. The judgment from which the appeal is taken adjudges that the bond and mortgage are void; that they be surrendered by appellant for cancellation; that they be canceled, and commands the appellant to execute a discharge in due form to the end that it may be recorded, and that the record may show that the bond and mortgage have been paid and discharged of record. The mortgagee executed an assignment in writing of the mortgage on the 3d day of January, 1908, to the defendant Bennett. This assignment was not under seal, but, following the signature of the mortgagee, is a recital that it was sealed and delivered in the presence of a witness named. It was, however, acknowledged by the mortgagee, and not by the subscribing witness. This assignment was also recorded. The ground upon which it is sought to cancel the bond and mortgage is that they are usurious and void. As I view the case, it is unnecessary to decide whether the evidence is sufficient to sustain the finding that the bond and mortgage are tainted with usury; but, if it were necessary to decide that question, I am of opinion that we would be obliged to agree with the referee in the inference which he draws from the evidence.

A very serious question is presented, however, as to whether that defense is open to the plaintiffs as against the bank which holds the bond and mortgage, or for which they are held by an employé as collateral security. There is no doubt, I think, that, by virtue of the provisions of sections 5197 and 5198 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3493), the bank, if it be an innocent

holder for value, could recover the principal due on the bond and mortgage, even though the instruments were tainted with usury. Haseltine v. Central Nat. Bank, 183 U. S. 132, 22 Sup. Ct. 49, 46 L. Ed. 117; Schlesinger v. Kelley, 114 App. Div. 546, 99 N. Y. Supp. 1083; Schlesinger v. Gilhooly, 189 N. Y. 1, 81 N. E. 619; Schlesinger v. Lehmaier, 191 N. Y. 69, 83 N. E. 657, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591. A national bank is not permitted to loan money on the security of real estate, and this doubtless accounts for the assignment being taken in the name of an employé, instead of in the name of the bank. That, however, does not render the security void or deprive the bank of the right to enforce it; but merely subjects the bank to liability to be called on to account to the government for exceeding its powers. National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Logan Co. National Bank v. Townsend, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107. There is no law, federal or state, which prevents an agent from taking security in his own name for the benefit of his principal. Schuyler Nat. Bank v. Gadsen, 191 U. S. 451, 24 Sup. Ct. 129, 48 L. Ed. 258. If the evidence which will be considered presently relating to the subsequent assignment by Bennett to the bank be deemed insufficient to show the execution of a valid assignment of the securities to the bank eo nomine, still I think parol evidence was admissible to show that this assignment was taken by Bennett for the benefit of the bank. The recital in it that it was sealed would doubtless make it a sealed instrument for the purpose of the statute of limitations, because that is an admission of the parties as to the nature of the instrument which they intended to execute; but such recital in the absence of a seal does not make the instrument one under seal within the rule forbidding the reception of parol evidence to show who were the real parties in interest or for whose benefit the instrument was executed when such evidence is offered in behalf of a third party claiming an interest, and not in behalf of a party to the instrument to impeach his own solemn agreement and relieve himself of liability. It is quite likely that the assignee named in the instrument to whom it was assigned individually would not be permitted to escape any liability thereon himself by showing that it was intended for the benefit of another, but that is not this case. He is here endeavoring to show in the interest of his principal that he was acting for the bank, and that it is entitled to the benefit of the protection afforded by the national banking act. The serious question arising on this branch of the case, if it were necessary to meet and decide it, would be, I think, whether the evidence shows that there was any valid consideration for the assignment to the bank which would give it the right to enforce the instruments, if void, as between the original parties. If any extension of time to pay the indebtedness as security for which the agreement was made, it has not been very clearly or satisfactorily shown. I am of opinion that a new trial should be granted, and that the action should not be tried until other parties are brought in, and therefore it becomes unnecessary to decide the merits of this point.

Prior to the 3d day of January, 1908, the defendant Squier was indebted to the American Exchange National Bank in a sum in excess of $12,000 on notes, both as maker and as indorser. The defendant Ben-

nett was at that time employed by the bank as discount clerk. It appears by the testimony of the assistant cashier of the bank that the defendant Squier applied to him for an extension of time within which to pay his indebtedness to the bank, and an extension of time for the payment of indebtedness due to the bank from the Meers Artificial Leather Company and the Manufacturers' Mercantile Company, in which he was interested as a stockholder and otherwise, and that the witness agreed that the extension would be granted provided Squier deposited additional collateral security and agreed to indorse notes of said companies in renewal of those due or about falling due upon which he was not then liable; that it was thereupon agreed that Squier should assign the bond and mortgage in question to the defendant Bennett for the bank, which was the course pursued by the bank in taking such security in numerous other transactions, and that Squier then sent the bond and mortgage to the bank, and its attorneys drew the assignment which Squier executed and delivered to the cashier, who turned the papers over to the appellant, whose duty it was to take charge of such securities for the bank. The defendant Bennett testified, in substance, that there were no negotiations with him concerning the assignment of the bond and mortgage to him; that he received them as an employé of the bank, and as additional security for the indebtedness of the defendant Squier to the bank; that, after the bond and mortgage were received by him, he executed and duly acknowledged an assignment thereof in blank, and delivered it to the cashier or another officer or agent of the bank, and that the papers were subsequently returned to him, put together, and held as security for the indebtedness of the defendant Squier to the bank. The defendant Squier, although named as a party defendant, was not served. At the commencement of the action, plaintiffs obtained a preliminary injunction enjoining appellant from transferring the bond and mortgage, with an order to show cause why it should not be continued pending the action. On the return day of the order to show cause, June 19, 1908, the appellant stipulated that he was then the owner and holder of the mortgage. On the 26th day of June, 1908, the attorneys for the plaintiffs and appellant entered into a stipulation in writing with respect to the payment of interest and taxes without prejudice, and appellant therein stipulated that he would not assign the bond and mortgage, and both stipulated that the issues between them in the action be forthwith referred to a referee named in the stipulation. On the case being opened before the referee, counsel for the appellant moved to dismiss the complaint on the ground that the trustee in bankruptcy of the defendant Squier was a necessary party, but had not been joined. The court denied the motion upon the ground that it did not appear that Squier had been adjudicated a bankrupt, and suggested that the only question with respect to the parties that could arise was on account of the plaintiffs' failure to serve Squier. On that point counsel for the appellant informed the referee that his client had agreed to raise no question on account of the absence of the defendant Squier. The reference then proceeded. The motion was renewed at the close of the plaintiffs' case and denied. The defendant offered in evidence a certified copy of the adjudication in bankruptcy against Squier, made on

the 12th day of March, 1908, in the United States District Court for the Eastern District of New York, which was before the commencement of the action. This was objected to as irrelevant and immaterial, and the objection was sustained and appellant duly excepted. The evidence, however, showed without objection that Squier had been adjudicated a bankrupt. His trustee in bankruptcy was summoned as a witness, and refused to produce certain papers upon the ground that he was a necessary party to the action, and that the judgment demanded would affect the interests of the estate of the bankrupt. The trustee in bankruptcy was not made a party, and the case proceeded to judgment in the absence of Squier or the trustee in bankruptcy and of the bank. The appellant makes the point that the case should not have been tried without the presence of the trustee in bankruptcy. This objection was, I think, well founded, and was one of which the court should have taken notice upon attention being drawn thereto, even without a formal motion. The undisputed evidence shows that the bond and mortgage were not sold outright, but were merely assigned as collateral security. It necessarily follows, therefore, that the assignor, and, after his interest passed to a trustee in bankruptcy, the trustee in bankruptcy, was interested in this litigation, and that his interests might be seriously prejudiced by the judgment which was demanded and which has been entered. The trustee in bankruptcy had the right to redeem this security by paying the indebtedness to the bank, and even though Squier was indebted to the bank, as found by the referee, in excess of the value of these securities, still the estate in bankruptcy is affected, in that after judgment herein the bank would be entitled to file a claim for the entire amount of the indebtedness without any deduction on account of the security. Although the judgment would not be binding upon the trustee, yet, since it compels the delivery up of the bond and mortgage for cancellation and their actual cancellation, and the execution of a discharge in such form that the record will show that the mortgage has been satisfied and discharged, it is manifest that the trustee could do nothing with the securities without another action in which he would be obliged to call upon the court to cancel the action which the court by this judgment has directed. The trustee in bankruptcy is entitled to be heard on the question as to whether or not this was a usurious transaction before this bond and mortgage are canceled or the record thereof is affected. Of course, as between the appellant and the plaintiffs, they could by stipulation, if the court saw fit to hear the case piecemeal, have had a decree which would have determined the questions as between themselves, and would have left the rights of other parties unaffected, but that was not done. The court has taken jurisdiction of the action, and has directed the entry of a judgment that necessarily affects property and property rights of the trustee in bankruptcy. The court should, when attention was drawn to the fact that a trustee in bankruptcy had been appointed who had succeeded to Squier's rights, have stayed the trial of the action, and have directed that the trustee in bankruptcy be brought in as a party defendant, for the issue could not be determined without prejudice to his rights, and, furthermore, any judgment between the plaintiffs and the appellant would have been abortive, as it would not be an

adjudication upon the entire issue, but it would, as has been done in form, cancel the securities and the record thereof, and it would be effectual for that purpose as between the parties to the action, and yet the securities would remain valid and subsisting as between the trustee in bankruptcy and the plaintiffs. Cook v. Lake, 50 App. Div. 92, 63 N. Y. Supp. 818; Mawhinney v. Bliss, 124 App. Div. 609, 109 N. Y. Supp. 332; Steinbach v. Prudential Ins. Company, 172 N. Y. 471, 65 N. E. 281.

I am also of opinion that the bank was a necessary party to the action, and that the appellant has no interest in the subject-matter thereof. It is not concluded by the stipulation of the defendant Bennett that he was the holder and owner of the bond and mortgage. His official position was not such that he was authorized to speak for the bank on that question, and the agency or trusteeship evidenced by his acceptance of the assignment does not give him such authority, where, as here, it appears that a formal assignment transferring the legal title to the bond and mortgage was executed by him in blank and was intended for the bank, and was delivered to and retained by it. If he had not executed such an assignment, perhaps the bank would be bound by a judgment against him, for he would be deemed to have held the bond and mortgage as agent or trustee for the bank, but that is not the case as presented by this record, for here he appears to have parted with all of his interest in the bond and mortgage. The assignment to the bank was not recorded, and this was doubtless for the same reason which led the bank to take the assignment from Squier in the name of Bennett. Of course, innocent third parties dealing with Bennett in the circumstances would be protected; but Squier knew that the bank was the real party in interest, and, when it further appeared that the legal title had passed to it, as between the parties, as well, the bank should have been made a party defendant. The case presented, therefore, shows that a judgment has been entered, canceling a bond and mortgage, and the record thereof on the service and appearance of a party who has no right, title, or interest therein, and, when it appears that there are two other known parties within the jurisdiction of the court interested, the one as the holder of the legal title as security, and the other as the owner of the equity of redemption, who have not been brought in as parties, and therefore the judgment is not binding upon either of them, and yet interferes with their property in a manner quite prejudicial to their interests.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM and HOUGHTON, JJ., concur.

HOUGHTON, J. I concur in a reversal of the judgment for the reasons stated by Mr. Justice LAUGHLIN; but I am of opinion that as against the bank, which should be made a defendant as the real party in interest, the plaintiff has no cause of action whatever. The exemption of a national bank from the usury law applies to collateral given after the indebtedness is incurred as well as to original indebtedness. Schuyler Nat. Bank v. Gadsen, 191 U. S. 451, 24 Sup. Ct. 129,

48 L. Ed. 258. Therefore, if the mortgage was in fact usurious and is to be governed by the usury law of New York state, still an action to set it aside for usury will not lie. But the mortgage sought to be set aside was given upon real property in the state of Rhode Island, which has no usury law. The fact that the mortgage was negotiated in the state of New York did not render it usurious if it was not usurious in the state where the real property upon which it is a lien was situated. The contract of creating a lien on real property must be construed according to the laws of the state where such real property is located. Stumpf v. Hallahan, 101 App. Div. 383, 91 N. Y. Supp. 1062, affirmed 185 N. Y. 550, 77 N. E. 1196. It would thus appear that the plaintiff has no cause of action in any event.

McLAUGHLIN, J. I dissent. There is ample evidence to sustain the finding of the referee that the bond and mortgage were usurious and void, but it is proposed to reverse the judgment because Squier's trustee in bankruptcy and the American Exchange National Bank were not made parties to the action. Bennett was the record holder of the title to the bond and mortgage, and the plaintiffs had a right to deal with him alone. They could have paid him the amount due and obtained the discharge of the instruments, which he alone could give, without regard for the equitable interests therein of the trustee and the bank. Likewise in this action to have the instruments canceled and discharged because of usury, Bennett, being the only person having any interest in them disclosed by the record, was the only necessary party defendant. Under the circumstances disclosed at the trial, while the trustee might properly have been joined as a party defendant, there was certainly no occasion for joining the bank. The bond and mortgage were assigned to Bennett by an instrument which was recited under seal, and, conceding that the bank was the real party in interest and that Bennett acted only as its agent or trustee, the plaintiffs could not be required to look beyond him, if indeed they could be permitted to do so.

The fact that Bennett some time thereafter executed an assignment in blank of the bond and mortgage did not change the nature of the transaction. This assignment purported to have been executed and acknowledged on the 3d day of January, 1908—the same day the bond and mortgage were assigned to Bennett by Squier, and, according to the testimony, as part of the same transaction. Yet the assignment recites that Squier's assignment to Bennett had been recorded in Rhode Island on the 7th day of January, 1908. This blank assignment was very obviously for the protection of the bank only, and there is no warrant for the statement that the bank ever held the legal title to the bond and mortgage by reason of this instrument. The referee expressly refused so to find. Moreover, on the 19th of June, 1908, Bennett's attorneys, who were also counsel for the bank "in certain matters," as his trial counsel testified, stipulated that Bennett was the then owner and holder of the bond and mortgage, and thereafter entered into another stipulation whereby plaintiffs agreed to pay to Bennett the interest due without prejudice, and he agreed not to assign the instruments.

There is no merit in the claim that, even if the instruments were usurious, the bank could recover the principal under the provisions of the national banking act. No such defense was pleaded, and, moreover, it does not appear that the bank paid any consideration for the assignment which it took in Bennett's name. It was alleged in the defendant's bill of particulars that the bank as consideration extended the time for payment on obligations of certain corporations in which Squier was interested, but the attempt to prove such extension at the trial failed. All that was shown was that Squier assigned the bond and mortgage as additional security for his prior indebtedness to the bank. That being so, such a defense would not defeat the action, even if had been pleaded and we could now consider it.

· Conceding, however, that the trustee and possibly the bank should properly have been made parties defendant, I do not think the judgment should now be reversed for failure to join them. The defect was raised neither by demurrer nor by answer. The defendant did move at the trial to dismiss the complaint on the ground that the trustee had not been made a party, but the proper practice, as suggested by the learned referee at the very commencement of the trial, would have been to move for an adjournment to the end that the other parties might be brought in. This the defendant's counsel carefully refrained from doing. So far as the defendant Bennett was concerned, therefore, the defect was waived. Code Civ. Proc. §§ 498, 499. The judgment is not a complete determination of the controversy in so far as it does not, in form, determine the rights of the trustee and the bank as between themselves, but it is a complete determination so far as the plaintiffs are concerned, and they were not bound to consider the interests of the trustee and the bank. The trustee and the assistant cashier of the bank who represented it· in this transaction testified as witnesses at the trial, and therefore had notice of the action. Had they desired a complete determination of the controversy in this action, they might have taken steps to bring about such a result. The case is quite different from that of Steinbach v. Prudential Ins. Co., 172 N. Y. 471, 65 N. E. 281. There an action was brought to reform and recover upon an insurance policy. The persons to whom the policy was upon its face payable had not been made parties, and it did not appear that they had any notice or knowledge of the action. The court held that although they were not, of course, bound by the judgment, the judgment in favor of plaintiffs should be reversed, "not necessarily for the protection of the defendant, as it had neglected its rights, but for their own protection, as well as the seemly and orderly administration of justice." Here the only person who had any interest in the action so far as appeared from the record was Bennett, the owner and holder of the legal title to the bond and mortgage, and he was made a defendant as already indicated. All the parties in interest knew of the pendency of the action, and had ample opportunity to protect their rights. So far as I can see, the only possible controversy which might hereafter arise would be from the trustee attempting to hold the bond and mortgage valid against the bank and Squier's indebtedness to it secured to that extent. But the bank could have obviated this by giving the trustee notice of the action and

calling upon him to defend, and there are many indications that it did do so. For the reasons stated, the judgment against Bennett was binding upon the bank, and, if it did not give notice to the trustee, at least that is no reason why the judgment should now be reversed.

To reverse the judgment now would be to promote and encourage the abuse pointed out in the dissenting opinion of Haight, J., in the Steinbach Case, and the case at bar does not present by any means the same reasons which controlled the majority of the court in the Steinbach Case. There has been a thorough trial of the action upon the merits. The plaintiffs never refused to join the trustee so as to make the judgment in form binding upon him, since no proper application was ever made. They should not be deprived of the relief to which, upon the record before us, they are clearly entitled, simply because the judgment may affect the rights of other parties which could properly have been determined in this action, when such other parties had notice of the action and apparently acquiesced in its trial upon the merits, and no steps were taken to have them made parties.

I think the judgment should be affirmed.