JOHN F. SCHOENHOEFT V. THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF KEARNY.

No. 15,256.   (92 Pac. 1097.)

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Bonded Indebtedness—Limitation of
Actions.* The rule of law that the statute of limitations does
not begin to run in favor of a municipal organization on its
outstanding warrants until it has money in its treasury to
redeem them does not apply to its ordinary bonded indebted-
ness represented by negotiable bonds and interest coupons.

Error from Kearny district court; WILLIAM EASTON
HUTCHISON, judge.   Opinion filed December 7, 1907.
Affirmed.

*T. F. Garver,* and *J. B. Larimer,* for plaintiff in
error.

*E. R. Thorpe, Harkless, Crysler & Histed,* and *Frank
P. Lindsay,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued for the interest due
upon certain municipal bonds represented by interest
coupons, one of which, typical of the others, reads as
follows:

"No. 25.                              July 1, 1899.
  "The township of Lakin, Finney county, state of
Kansas, will pay to bearer, at the fiscal agency of the
state of Kansas, in the city of New York, seven dol-
lars and fifty cents, being six months' interest on fund-
ing bond No. 1 for $250.
Attest:                         A. B. BOYLAN, *trustee.*
  F. C. KENNEDY, *tp. clerk.*"

The date stated is that of the maturity of the coupon.
Proper allegations were made showing that the de-
fendant had succeeded to the liability of Lakin town-
ship in Finney county.   When the action was com-
menced more than five years had elapsed since the
maturity of the coupons, and to avoid the effect of the

statute of limitations the following allegations were inserted in each cause of action of the petition:

"That when said coupon by its terms became due and payable the same was duly presented at the place of payment therein mentioned and payment demanded, but was refused because said defendant had not, and did not have at any time before or since, any funds at said place for the payment thereof, nor has said defendant, at any time, made any levy for taxes or provided funds out of which said coupon could be paid."

A demurrer to the petition was sustained, and the question is if the matter quoted can have the effect claimed for it. The plaintiff argues that the rule which governs the liability of a municipality upon treasury warrants should apply to its ordinary bonded indebtedness. The rule with respect to warrants is stated in *School District v. Bank,* 63 Kan. 668, 66 Pac. 630, as follows:

"Orders were drawn by the proper officers of a school district on the treasurer for the payment of money out of a designated fund. In an action against the district on the warrants, it appeared that at no time since the debt was created had there been any money in the treasurer's hands applicable to the payment of the orders. *Held,* that the school district was estopped from interposing the defense that the action was barred by the statute of limitations." (Syllabus.)

In *Hubbell v. South Hutchinson,* 64 Kan. 645, 68 Pac. 52, it was said:

"The statute of limitations will not begin to run in favor of a city on its outstanding warrants until it has money in its treasury to satisfy such obligations." (Syllabus.)

Although warrants may take the form of negotiable paper and be made payable at a specific date, they are not negotiable in the commercial sense, belong in a class by themselves, and are fundamentally different from ordinary municipal bonds and coupons representing instalments of interest upon such bonds. This

is made clear by the general law relating to the issuing, registration and order of payment of municipal warrants. All warrants must specify out of what fund they are payable and the nature of the claim or service for which they are issued. The clerk and the treasurer of the municipality both make a record of them before delivery. It is the treasurer's duty to pay them on presentation, provided, however, he has sufficient money in the fund on which they are drawn to do so. If the treasurer cannot pay on presentation he stamps them "Presented and not paid for want of funds" (Gen. Stat. 1901, § 6011) and registers them. Thereafter they are to be paid in the order of registration, and as funds come in the treasurer sets apart a sufficient sum to take them up. At stated times the treasurer publishes a call for the redemption of as many warrants as he can pay, and interest upon them ceases after publication of the call. (Gen. Stat. 1901, ch. 87.) Under this statute warrants are simply drafts on anticipated revenue (*City of Burrton v. Savings Bank,* 28 Kan. 390; *School District v. Bank,* 63 Kan. 668, 66 Pac. 630), which, whatever the form or expressed date of maturity, are not in law or in fact payable except as from time to time money to meet them is received into the specific fund of the treasury upon which they are drawn. A judgment upon a warrant merely establishes the claim against the municipality, and it is still payable only in the order of its registration from the fund designated for the purpose.

Obligations of the character of those in suit are general promises to pay at all events upon a certain day. True, a fund must be created by taxation to meet coupons representing the interest upon bonded indebtedness; but no particular fund is, at the time of their issue, expressly pledged in advance to their payment, and whether or not money has been raised to meet them they are due and payable absolutely upon the stated days of their maturity. Perhaps under exceptional circumstances warrants may sometimes be-

come payable when funds to meet them ought to be in the treasury, but ordinarily it is the condition of the public treasury which matures them. Unless the circumstances be decidedly exceptional bonds and their attendant coupons mature according to contract.

The foregoing being true, it may properly be said the legislature intended that the statute of limitations should be regarded as commencing to run upon a warrant from the time funds are in the treasury, and not from the date of the instrument or from the nominal date of maturity expressed on its face. In any event a municipality with power to provide the funds necessary to mature its outstanding warrants should not be allowed to assert its own neglect to take steps to that end for the purpose of raising the bar of the statute. But since all the reasons upon which such conclusions are based fail in respect to ordinary negotiable bonds and coupons, they must be left to be governed by the law applicable to instruments of the class to which they belong.

The plaintiff's argument presumes largely upon general statements made in decisions referring to particular obligations governed by particular statutes. Thus the language of this court in the opinion in the case of *Hubbell v. South Hutchinson*, 64 Kan. 645, 68 Pac. 52, is quoted as if decisive of this one. It was there said:

"This action was based upon certain written obligations and, in the absence of intervening circumstances, would become barred within five years from the date of their issuance. It is the settled law of this state, however, that the statute of limitations does not run in favor of a municipal or *quasi*-municipal corporation upon its outstanding obligations until the corporation has provided a fund with which payment thereof may be made. (*School District v. Bank*, 63 Kan. 668, 66 Pac. 630, and cases there cited; *Miller v. Haskell County, post*, 66 Pac. 1084.)" (Page 646.)

The syllabus of the case, the authorities cited and the context show that the court had in mind nothing

but the specific class of instruments it was then considering, viz., municipal warrants. It was not the purpose to settle (or, more accurately stated, to overturn) the law relating to the limitation of actions upon ordinary municipal bonds.

The plaintiff maintains that, according to a certain line of decisions, when municipal bonds are payable out of a fund which the debtor must provide by a levy of taxes it is estopped to plead the statute of limitations until that duty has been performed and funds for payment have been provided by that method. It is claimed the decision in the case of *Underhill v. Trustees of the City of Sonora*, 17 Cal. 172, is to that effect. The court announced no such principle in that case. The ground of the decision is apparent from the second paragraph of the syllabus, which reads:

"Bonds of the city of Sonora, dated March 25, 1853, and falling due in two years, are sued on April 5, 1860. March 9, 1855, an act of the legislature was passed, reincorporating the city, and providing that 'in case the public debt is not liquidated at the expiration of three years the trustees shall have power to levy a sufficient tax, in addition to the one per cent. authorized' in another section for general purposes of revenue, 'to pay the outstanding debt.' March 29, 1858, another similar act was passed, the time mentioned being six instead of three years. These acts were passed at the instance of the corporators. *Held*, that these acts recognize the city debt, and provide for its payment; and hence withdraw the bonds from the statute of limitations."

The opinion is equally clear. An abstract from it is quoted in *School District v. Bank*, 63 Kan. 668, 671, 66 Pac. 630.

The decision in the case of *Freehill v. Chamberlain*, 65 Cal. 603, 4 Pac. 646, is cited. It is only necessary to quote the syllabus to show that the coupons there in suit were, by the statute authorizing their issue, in effect placed in the same category as warrants in this state. It reads:

"Where a statute provides for the issuing of bonds

of a city, with interest coupons payable as fast as money should come into the treasury from special sources designated by the act, the statute of limitations does not commence to run against the coupons until the money is received in the treasury in accordance with the terms of the act.

"The interest coupons upon bonds of the city of Sacramento, issued under the act of April 24, 1858, are not demands which are required to be presented for allowance to the auditor or board of trustees. They are payable on presentation to the treasurer, whenever there are funds in his possession which have been appropriated to the payment of the coupons by the act authorizing the bonds."

The case of *Lincoln County v. Luning,* 133 U. S. 529, 10 Sup. Ct. 363, 33 L. Ed. 766, is relied upon. The coupons there involved were virtually converted into treasury warrants by an act of the legislature passed after they were issued and accepted by the creditor. An extract from the opinion by Mr. Justice Brewer is quoted in *School District v. Bank,* 63 Kan. 668, 670, 66 Pac. 630.

The case of *Sawyer v. Colgan,* 102 Cal. 283, 36 Pac. 580, is also referred to. The bonds there under consideration were state bonds issued under a special act for a special purpose. It was expected that congress would provide funds to pay them. If it did not do so the intention of the legislature, as expressed in the act, was that they should be payable out of money which should be found in the state treasury at their maturity, and which should come into the treasury after maturity, that had not been appropriated to some other purpose. No surplus existed in the general fund of the state treasury for many years after the date of maturity stated in the bonds had passed and no provision for paying them was made. If they had been presented for payment they could not have been paid, for want of funds. The bondholder could not sue the state, for no law authorized him to do so. "The state, by reason of her sovereignty, still held control of the question of payment as to all its incidents of time,

mode and measure." (Page 292.)   So it was said, upon the authority of *Underhill v. Trustees of the City of Sonora, Freehill v. Chamberlain,* and *Lincoln County v. Luning, supra,* that "it is a general rule that when payment is provided for out of a particular fund, or in a particular way, the debtor cannot plead the statute of limitations without showing that the particular fund has been provided, or the method pursued."   (Page 292.)

This certainly falls very short of establishing the doctrine contended for.   Taxes are the primary source of municipal revenue, and money accumulated entirely from taxes with which to meet a general obligation to pay cannot be said to be a particular fund in the sense of the decision, nor can it be said that taxation, the chief method of raising municipal revenue, is a special or particular method.

No other authority cited by the plaintiff supports his argument, and this court is unwilling to extend the exceptional rules relating to the treasury warrants of a municipality to its bonded indebtedness.

Therefore the judgment of the district court is affirmed.