SMYTHE v. INHABITANTS OF NEW PROVIDENCE TP.

SAMMIS v. SAME.

(District Court, D. New Jersey. October 28, 1918.)

1. LIMITATION OF ACTIONS ⬥═22(5)—STATUTE APPLICABLE—ACTION ON IN-
   TEREST COUPONS.
   Actions upon interest coupons attached to negotiable bonds are gov-
   erned by the statute of limitations applicable to the bonds to which they
   are, or were, attached, except that limitation begins to run from the
   maturity of the coupon, and not of the bond.
2. LIMITATION OF ACTIONS ⬥═34(1)—ACTION ON MUNICIPAL BONDS.
   The rule that a general statute of limitations does not apply to an
   action on a liability created by statute is limited to cases where the
   liability rests directly upon a statute, and not on any contract of the
   parties, and is not applicable to an action on municipal bonds, although
   issued under statutory authority.
3. LIMITATION OF ACTIONS ⬥═48(6)—ACCRUAL OF RIGHT OF ACTION—ACTION
   ON MUNICIPAL BONDS.
   The rule that, where municipal bonds are payable from a particular
   fund to be created by the debtor, limitation does not begin to run
   against an action thereon until the fund has been provided, does not
   apply to bonds payable by general taxation, although the statute requires
   the creation of a sinking fund.
4. LIMITATION OF ACTIONS ⬥═22(7)—BONDS—EFFECT OF OMISSION OF SEALS—
   "SEALED INSTRUMENTS."
   Municipal bonds, which the statute, under authority of which they were
   issued, required should be under the seals of those directed to execute
   them on behalf of the municipality, and which recite that such seals
   were affixed, although in fact they were not, being valid, notwithstanding
   the omission, are, for the purpose of the application of the statute of
   limitations, "sealed instruments."
   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Sealed Instrument.]

At Law. Actions by Roland M. Smythe and by Elinor G. Sammis against the Inhabitants of the Township of New Providence. On demurrers to twelfth, thirteenth, sixteenth, and seventeenth pleas in

the Smythe suit, and to twelfth, thirteenth, and sixteenth pleas in the Sammis suit.   Sustained in part, and overruled in part.

Erwin & Erwin, of Jersey City, N. J., and Albert Massey and Carroll Sprigg, both of New York City, for plaintiffs.

McCarter & English, of Newark, N. J., for defendant.

HAIGHT, District Judge.   The main questions raised by the demurrers are:   (1) Whether any of the provisions of the New Jersey statute of limitations (3 Comp. Stat. p. 3162 et seq.) are applicable to these suits; and (2) if so, whether it is the first or the sixth section thereof, or both.   In reaching a solution of these, certain subsidiary questions arise, which will appear as they are hereafter discussed.

[1] 1. As it is sought to recover both the amount due on the bonds and the coupons attached thereto, a primary question arises—whether the statute of limitations affects the suits, so far as the coupons are concerned, differently than it does so far as the bonds are concerned. It has been settled by a line of decisions of the United States Supreme Court that, as respects the usual statutes of limitations, ordinary interest coupons (such as those upon which this suit is partly based), attached to negotiable bonds, are to be considered as the same grade of contract as the bonds, or, in other words, that the same provision of the statute of limitations as is applicable to the bonds is applicable to the coupons, except that the statute begins to run from the date of the maturity of the coupons, respectively, and not from the date of the maturity of the bonds to which they have been respectively attached, and this irrespective of whether the coupons have been detached from the bonds or remain attached thereto.   City v. Lamson, 9 Wall. 477, 483, 19 L. Ed. 725; Lexington v. Butler, 14 Wall. 282, 296, 20 L. Ed. 809; Clark v. Iowa City, 20 Wall. 583, 586, 22 L. Ed. 427; Amy v. Dubuque, 98 U. S. 470, 25 L. Ed. 228; Koshkonong v. Burton, 104 U. S. 668, 673, 26 L. Ed. 886.

The contention of counsel for the defendant that the case last cited has varied the rule clearly announced in the preceding cases—that coupons are controlled by the same statute of limitations as the bonds to which they were or are attached—is based on a misapprehension of what was held in that case.   It was specifically stated by Mr. Justice Harlan, on page 673 of 104 U. S. (26 L. Ed. 886), that, at the time of the passage of an act of 1872 (which limited actions on municipal bonds and coupons to six years after they became due, respectively), the suit as respects the coupons was not barred, because 20 years (the time limited in the previous statute for beginning actions on sealed instruments) had not then expired.   The action on certain of the coupons was held to be barred solely by virtue of the act of 1872.   It follows, therefore, that, if either of the before-mentioned provisions of the New Jersey statute of limitations is applicable to the bonds, the same provision applies to the coupons; that, if neither is applicable to the bonds, neither applies to the coupons; and that the times when the statute begins to run against the coupons are the dates that they matured or were payable, respectively.

[2] 2. It is insisted by the plaintiff that neither of the before-mentioned provisions of the statute of limitations is applicable to these suits, for two reasons. It is first urged that these suits are based on a liability created by statute, and consequently that the statute of limitations does not apply. It is undoubtedly well settled, and has been long established, that where a liability is created, not merely by the act of the parties, but by the positive provisions of the statute, a statute of limitations framed, as is the New Jersey act, after the original statute of 21 James I, is not applicable. Angell on Limitations, § 80,. and cases to be hereafter referred to. The defendant does not question the rule, but denies that it is applicable to these cases. A short analysis of the decisions upon which the plaintiffs rely, and a comparison of the facts upon which they were based with the facts in this case, will, I think, clearly demonstrate that defendants' contention is correct.

In Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459 (C. C. A. 9th Cir.), the bonds upon which the suit was brought had been issued by Alturas county. Subsequently the Legislature of Idaho abolished that county and another, and consolidated the two, giving to the consolidated county the name of Blaine, and provided that the latter county should be responsible for all of the debts of the original counties. It was held in a well-considered opinion, where all of the leading authorities are referred to, that the Idaho statute of limitations did not apply, because the liability of the defendant (Blaine county), or the cause of action against it, had been created by statute; that independently of the statute there was no obligation upon Blaine county to pay the debt of its predecessor, Alturas county, nor, independently of the statute, could any action be maintained thereon against Blaine county. Hence it will be seen that the liability, so far as the defendant in that action was concerned, was one created distinctly by statute, and the act of the parties was merely incidental.

Bullard v. Bell, Fed. Cas. No. 2,121, 1 Mason, 243 (C. C. N. H.),. was a suit by the holder of a dishonored bank note against a stockholder of the bank. The liability of the stockholder to answer for the debts of the bank was created by statute. No act of the parties had created the liability.

In Cowenhoven v. Freeholders, 44 N. J. Law, 232, the plaintiff sued to recover fees due him, under a statute, as county judge of Middlesex county. The inapplicability of the statute of limitations was placed expressly on the ground that the action was founded on the statute, and not on a contract of any kind; there never having been any contract whatever between the defendant and the plaintiff.

The plaintiff, in Outwater v. Passaic, 51 N. J. Law, 345, 18 Atl. 164, sued for salary due him, as city treasurer, by an ordinance passed in pursuance of a statute. His claim was held not to be barred by the statute of limitations, for, as Chief Justice Beasley said:

"The plain reason that it is not a debt which has arisen under a contract, either express or implied. The obligation to pay these moneys is the creation of the statute directing the election of the officer, and the admeasurement of his salary by ordinance."

The suit in Smith v. Jersey City, 52 N. J. Law, 184, 18 Atl. 1050, was to recover excess moneys paid on an assessment for local improvements, and the liability was expressly held to rest upon a statute, and hence that the statute of limitations was not applicable. To the same effect were the decisions in McFarlan v. Morris, etc., Banking Co., 44 N. J. Law, 471, and Lehigh Valley Railroad Co. v. McFarlan, 43 N. J. Law, 605.

In Parisen v. N. Y. & Long Branch R. R. Co., 65 N. J. Law, 413, 47 Atl. 477, the suit was to recover an amount which had been awarded by commissioners appointed to fix the value of lands taken for the right of way of the defendant. The cause of action was expressly given by the statute. It was held that the award was not such a one as was contemplated by that provision of the sixth section of the New Jersey statute of limitations, which mentions suits based upon awards under the hands and seals of arbitrators.

It is thus apparent that in all of these cases the liability or cause of action was given by, or rests exclusively upon, a statute, independent of any act of the parties. In the cases at bar the suits are based upon the bonds of the defendants. It is true that they were executed by virtue of statutory authority, but the statute does not impose the liability. Without the action of the commissioners, no bonds could have come into existence, and no liability or cause of action could have arisen against the defendants. It was only after certain things had been done that the bonds could be issued, but the liability was created by the act of the commissioners in issuing the bonds.

If the plaintiffs' argument were sound, none of the ordinary statutes of limitations would run against any municipal bonds, because all such bonds are issued pursuant to statutory authority. It needs no argument to demonstrate the fallacy of any such contention, because municipal bonds are subject to the statute of limitations, a rule which is recognized in all of the cases of which I have ever heard. See, for instance, the United States Supreme Court cases before cited, the cases to be hereafter referred to in discussing the plaintiffs' second point, and the cases collected in volume 2 of the fifth edition of Dillon's Work on Municipal Corporations, p. 1325.

The Supreme Court of New Jersey, in Morrison v. Township of Bernards, 36 N. J. Law, 219, has held that a suit may be maintained on bonds issued pursuant to the same statute as that under which the bonds in this case were issued, thus recognizing, I think, considering the circumstances under which the question arose, that it is the act of the parties that creates the liability, and not the statute. If strength is to be found for plaintiffs' contention in his argument that it will be necessary, before the suit on the bonds can succeed, to show that the statute was complied with in all its respects prior to the issue of the bonds (which I am not ready to admit), it is sufficient at this time to refer to the opinion of the Supreme Court of the United States in Bernards Township v. Morrison, 133 U. S. 523, 526, 10 Sup. Ct. 333, 33 L. Ed. 766, the effect of which is to clearly demonstrate that the cause of action on bonds issued, pursuant to this statute, rests upon the bonds, and not upon the statute which authorized their issuance. I

conclude, therefore, that the plaintiffs' causes of action do not rest upon a statute, in any such sense as to bring them without the provisions of the New Jersey statute of limitations.

[3] 3. It is next urged on behalf of the plaintiffs that the act under which the bonds in suit were issued provides for the creation of a particular fund for the payment and retirement of the bonds and the interest coupons, and there is invoked the rule, stated in Lincoln County v. Luning, 133 U. S. 529, 533, 10 Sup. Ct. 363, 364 (33 L. Ed. 766), that—

"When payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided."

To demonstrate the applicability of that rule to this case, plaintiffs rely solely upon the authority of Robertson v. Blaine County, supra. It appears from the statement of facts in that case that the statute authorizing the issuance of the bonds provided that—

"The board of county commissioners of said county shall, at the time of levy of county taxes, include therein a levy of sufficient tax to meet the interest and principal of said bonds as the same shall become due, and the tax so levied shall be known as the 'Courthouse Bond Tax,' and shall be collected as other taxes are collected, and shall constitute a separate fund, and shall be used for no other purpose. And for the payment of said bonds, principal and interest, all of the taxable property of said county is hereby pledged."

It must be admitted that if the "particular fund" referred to in that case was that created by the above-quoted act, then that decision is an authority for the plaintiffs' contention, because if that statute created, within the meaning of the rule before mentioned, "a particular fund," then the statute under which the bonds in suit in this case were issued likewise created a "particular fund." The latter provided for reporting annually by the commissioners, who executed and issued the bonds, to the township committee the amount required to pay the principal and interest, if any, due or to become due and payable during the next ensuing year, and required that the township committee should levy and collect, at the same time and in the same manner as other taxes are collected, such sums of money as should be reporte' to the township committee by the commissioners, and should pay the same to the latter, which should apply them to the payment of the principal and interest on the bonds, or so much thereof as should remain unpaid after the commissioners had applied the dividends arising from the stock which the bonds were issued to purchase. It further required the commissioners to provide, within five years from the issuing of the bonds, for the annual payment of at least 5 per cent. of the same, so as to insure their final liquidation within 25 years, and for that purpose directed that they should annually apply the surplus dividends on the stock over and above the amount necessary to pay the interest on the bonds, and if the amount of surplus dividends and the amount received by the commissioners for the sale of the stock, which they were authorized to sell, should not be sufficient for the annual payment of the 5 per cent., that then the deficiency should be reported by the commissioners to the township committee, to be levied and raised annually, in the manner provided for "paying the interest" on the bonds. It

also provided that at the expiration of 25 years it should be the duty of the board of assessors of the township, unless the payment for the bonds was otherwise provided for, to cause to be assessed, levied, and collected, on the real estate in the township, at the time and in the manner as other taxes were assessed and levied, the sum due on the bonds issued pursuant to the act, together with interest, or so much thereof as should remain unpaid, "by reason of the deficiency of the dividends and sale of said stock," and that the amount to be so raised should be determined by the report of the commissioners to the township committee, as before authorized.

It is necessary to consider, therefore, if the decision in Robertson v. Blaine County is based on the statute above quoted, and not on another statute which is not specifically set forth in the report of the case (which latter would seem to be the fact from the remarks of the court on page 71 of 90 Fed., 32 C. C. A. 512, 47 L. R. A. 459), whether Robertson v. Blaine County can be sustained on principle or authority, or both. If it can be, then it would seem to follow, under the rule announced in Lincoln County v. Luning, supra, that the defendant should have coupled with its pleas of the statute of limitations an allegation that the fund provided by the statute for the payment of the bonds and the interest had been created. By reference to Lincoln County v. Luning, and the discussion in that case of Underhill v. Sonora, 17 Cal. 173, and Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646, it will be seen that the "particular funds" out of which the bonds were to be paid were quite different from those out of which the bonds were to be paid either in this case or in Robertson v. Blaine County.

In Lincoln County v. Luning, the county having defaulted in the payment of its interest coupons, the Legislature passed another act, providing for the registration of overdue coupons, and imposed upon the treasurer the duty of thereafter paying the coupons "as money came into his possession applicable thereto, in the order of their registration." The coupons in suit, which, the court remarks, "by the general limitation law would have been barred," were presented as they fell due to the treasurer for payment, and payment was refused, because the interest fund was exhausted. Thereupon the treasurer registered them, in accordance with the later act. Mr. Justice Brewer said that the later act, coupled with what was done by the treasurer pursuant thereto,

"amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as the money came into the interest fund, and such promise was by the debtor accepted."

It was held in Freehill v. Chamberlain, as Mr. Justice Brewer says, that—

"Where the statute provides for the issuing of bonds of a city, with interest coupons payable as fast as the money should come into the treasury from special sources designated by the act, the statute of limitations does not commence to run against the coupons until the money is received in the treasury in accordance with the terms of the act."

To the same effect was the decision in Underhill v. Sonora. The underlying principle, I think, upon which it was decided in those cases, and others which hold the same (they are very few), that the stat-

ute of limitations would not run until the fund had been provided, was that the cause of action would not exist until the fund had been created.

Further support is found for this view in Schoenhoeft v. Board of Commissioners, 76 Kan. 883, 92 Pac. 1097, 16 L. R. A. (N. S.) 803, 14 Ann. Cas. 100, where the distinction between suits on ordinary municipal bonds which are to be paid out of money raised from taxes, and suits on municipal warrants, payable out of certain funds, only when a treasurer has sufficient money in the fund to pay them, is pointed out, as well as is the distinction between most of the cases relied upon in Robertson v. Blaine County and the case which was then before that court. The fundamental difference is, as I gather it from that decision, whether a cause of action exists before the particular fund has been created. That was the basis of the decision in King Iron Bridge Co. v. Otoe County, 124 U. S. 459, 463, 8 Sup. Ct. 582, 31 L. Ed. 514.

In Bodman v. Johnson County, 115 Iowa, 296, 88 N. W. 331, it was held that, where there was statutory authority to make additional assessments to pay for the cost of county ditches, the statute of limitations ran against warrants payable out of the "ditch fund," from the date of their issue, and not from the date when there were assets actually in the fund from which they were payable; that, as it was the duty of the county to raise the necessary funds, and as it had the authority to do so, the plaintiff was not justified in postponing the bringing of his action until the funds were actually on hand. Of course the statute of limitations has never been held to begin to run until the cause of action accrues, but the moment it does accrue the statute begins to run.

The broad rule stated by the Supreme Court in Lincoln County v. Luning, must therefore, I think, be read in the light of the facts of that case, and be considered to mean that the statute does not begin to run until the "particular fund" has been provided, when the existence of that fund creates the cause of action. If the decision in Robertson v. Blaine County is broader than that, then I do not think it is supported by authority, nor does reason justify it. This is manifest, I think, from a consideration of the act under which the bonds in suit were issued, taken in connection with the general rules to be hereafter referred to. It is true that the act provided for the creation of a fund to pay the principal and interest out of the dividends accruing from the stock which the bonds were issued to purchase, as well as from a sale of the stock itself. But it further provided for the raising of any deficiency by general taxation.

There is no pretense in this case that payment of these bonds or coupons was refused on account of lack of funds to pay them. If it can be said that these bonds and coupons were to be paid out of a "particular fund," within the meaning which plaintiffs seek to ascribe to the remarks of the Supreme Court in Lincoln County v. Luning, then it can be said with equal force that any municipal bond, for the payment of which the statute provides for the creation of a sinking fund or other fund to be raised by general taxation, without limiting the right to sue on the bonds before the fund is created, is a "particular

fund," and hence, in any such case, the statute of limitations would not apply to a suit on the bonds, where the municipality had neglected to assess the taxes necessary to meet the bonds. But that would be contrary to the general rules that suit may be instituted on municipal bonds and coupons when they mature, and that the statute of limitations begins to run from the date when the cause of action accrues; it would also seem to be at variance with that line of federal authorities which hold that, before mandamus will issue to compel the assessment of a tax, a bondholder must obtain a judgment on the bonds. See Heine v. Levee Commissioners, 19 Wall. 655, 657, 22 L. Ed. 223 and cases there cited. As the bonds and coupons in suit were payable at stated times, and as the statute which authorized their issuance provided, as the ultimate means for their payment, for the raising of money in the ordinary way, by the levying and collection of taxes, I am unable to perceive any reason why the general rule that a cause of action arises on such bonds and coupons at the dates of their maturity respectively, does not apply.

[4] 4. The next question is whether section 1 or section 6 of the New Jersey statute of limitations applies. Section 1 limits actions to 6 years, and section 6 to 16 years. The former embraces actions founded on contracts "without specialty," as did the original act of James I, and the latter actions, among others, "upon any single or penal bill for the payment of money only, or upon any obligation with condition for the payment of money only." While the quoted clause of the last-mentioned section does not in so many words refer to instruments under seal, the courts of New Jersey have given to the terms used their well-recognized legal significance, and have construed that clause to cover actions "upon sealed instruments for the payment of money only." Elsasser v. Haines, 52 N. J. Law, 10, 22, 18 Atl. 1095, 1100. Therefore bonds under seal are within the provisions of the sixth section, and if the seals hereinafter mentioned had been affixed to the bonds upon which these suits are based, there would be no doubt as to the applicability of that section. However, while the bonds are in the usual form, and recite that the persons who executed them (commissioners appointed pursuant to the statute which authorized their issuance [P. L. N. J. 1868, p. 915]), "have hereunto set our hands and seals," they do not in fact bear such seals. The statute directed that they should be "under their [the commissioners'] hands and seals," not under the seal of the municipality whose obligations they were.

I have already held on the authority of Draper v. Springport, 104 U. S. 501, 26 L. Ed. 812, when the question was raised by demurrers to the declarations, that the absence of the seals of the commissioners did not invalidate the bonds. The question to be decided, therefore, is whether municipal bonds, which the statute, under the authority of which they were issued, required should be under the seals of those who were directed to execute them on behalf of the municipality, and which recite that such seals were affixed, although in fact they were not, and which notwithstanding are valid and binding obligations of the municipality, are to be considered, for purposes of the application of the statute of limitations, as contracts "without specialty" (simple

contracts), or as obligations under seals (specialties). I think.that, if the bonds in suit were those of an individual or a private corporation (not issued pursuant to express legislative authority, defining the form in which they should be issued), they could not, under the weight of authority, be considered as sealed instruments, notwithstanding that they recited that they were given under the seal of the obligee. Overseers of Hopewell v. Overseers of Amwell, 6 N. J. Law, 169; Perrine v. Cheeseman, 11 N. J. Law, 174, 19 Am. Dec. 388; Taylor v. Glaser, 2 Serg. & R. (Pa.) 502, 503; Comley v. Ford, 65 W. Va. 429, 64 S. E. 447, 450; Bouvier's Law Dictionary, page 1020; and by inference Corlies v. Vannote, 16 N. J. Law, 324. See, contra, Slade v. Bennett, 133 App. Div. 666, 118 N. Y. Supp. 278, 280, and Oconto County v. MacAllister, 155 Wis. 286, 295, 143 N. W. 702, 704. '

But these are municipal bonds, issued pursuant to a statute which expressly directed the manner in which they should be executed, and they are valid obligations, notwithstanding the omission of one of the statutory ` requirements. The Legislature contemplated that they should be specialties, and in every respect, save the seals of the individual commissioners, they are such in form. It was said by Mr. Justice Bradley in Draper v. Springport that "the seals could have added nothing to the solemnity of the instruments." If that be so, if the instruments are as solemn as they could have been had the seals been affixed, it is difficult to perceive why they are not, to all intents and purposes, sealed instruments. To say that the seals could have added nothing to the solemnity of the bonds, but that the bonds are, nevertheless, simple contracts, is, I think, to express an irreconcilable contradiction. A simple contract is never spoken of in legal parlance as a "solemn instrument," while a contract under seal—a specialty—is. In view of the before-mentioned decision of the Supreme Court, I think that it must be held that the statute which authorized the bonds to be issued has fixed their grade or character, to the same extent as if the statute had specifically said that the bonds to be issued should be considered for all purposes as specialties, and that the omission of the individual seals of the commissioners, who executed them on behalf of the municipality, has not changed that grade or character.

To hold otherwise would be to permit those charged with the execution of a statutory duty, by dispensing with what the Supreme Court has held to be an unessential requirement, so far as the validity of the bonds is concerned, to transform what the Legislature contemplated should be a specialty into a simple contract. Such a result should not be permitted, if it can be avoided. Of course, it was as fully within the power of the Legislature to prescribe the grade of contract which the bonds should be as it was to define the formality with which they should be executed. I apprehend that, had the statute required that the bonds should be under the seal of the municipality, rather than the individual seals of the commissioners, the Supreme Court's decision in Draper v. Springport in respect to the validity of the bonds would have been different than it was. In such a case a suit could not have been maintained on the bonds, and the question now presented could not have arisen. Some support for the views above expressed is found,

I think, in the remarks of the Supreme Court of Wisconsin, in Oconto Co. v. MacAllister, supra, to the effect that—

"The mere omission of a scroll or flourish after the names of the signers would be quite a flimsy ground of distinction, and cannot outweigh the consideration that the statute required a bond which imports a sealed instrument, that the instrument is in the form of a bond, and that it is expressly stated to be sealed with the seals of the signers."

My conclusion, therefore, is that the suits, so far as they are based on the bonds and coupons which did not mature within 16 years from the beginning of these actions, are barred by the statute of limitations, and that the suits, so far as they are based on those which did mature within that period are not barred. This results in the sustaining of some of the demurrers and the overruling of the others. An order drawn in accordance with these conclusions will be signed.