[Sac. No. 5651. In Bank. Dec. 30, 1944.]

JAMES IRVINE et al., Appellants, v. WILLIAM C. BOSSEN, as County Treasurer, etc. et al., Defendants and Respondents; E. JULIEN, Intervener and Respondent.

W. Coburn Cook and A. L. Cowell for Appellants.

Downey, Brand & Seymour and Stephen W. Downey as Amici Curiae on behalf of Appellants.

Richard H. Fuidge, District Attorney, and Rich & Weis for Respondents.

CARTER, J.—This is a mandamus proceeding instituted in the Superior Court of Yuba County to compel the county treasurer of that county to pay to petitioners certain bonds and accrued interest thereon out of funds available in the bond fund of Reclamation District No. 784 on deposit with said treasurer.

Reclamation District No. 784 was organized in 1907 under sections 3446 to 3493 of the Political Code. On January 1, 1921, the district issued bonds in the principal sum of $834,-000 bearing interest at the rate of 6 per cent per annum secured by assessments theretofore levied upon lands in the district. The court found that petitioners are the holders of two $1,000 bonds which matured on January 1, 1930, and five $1,000 bonds which matured on January 1, 1931. None of the bonds or coupons maturing in 1930 or 1931, have been paid except a portion of the coupons maturing on July 1, 1930. Intervener Julien holds one $1,000 bond which matured on January 1, 1934, and it has not been paid. He filed his petition

in intervention on July 28, 1941. The district paid all of the interest coupons which matured prior to 1930. The bonds commenced maturing on January 1, 1930, in the amount of $90,000 and matured on January 1st of each year thereafter to and including 1938; on January 1, 1939, the balance of $24,000 matured. There are unpaid bonds of said district aggregating $212,000 in principal. As to 71 of those 212 bonds including petitioner's bonds, actions have been commenced thereon and judgments recovered determining that the statute of limitation had not run thereon. As to the balance of 141 bonds, including intervener's bond, no action has been commenced thereon and they have not been presented for payment or registration, nor has demand for their payment been made. Of the 141 bonds, 25 matured on January 1, 1930, and 22 on January 1, 1931. Of the bonds falling due on January 1 of 1930 and 1931, only the seven bonds held by petitioners have been reduced to judgment. Petitioners' bonds have been presented to the treasurer for payment and registration. The trial court found that the district is solvent and the treasurer has on hand in the bond fund $9,466.70 for the payment of bonds; that all the calls for assessment required by the statute have been made but there have never been sufficient funds on hand to pay all outstanding bonds; that all the steps required to be taken by the district's officials to provide for the payment of the bonds have not been taken; and that petitioners' bonds are not barred by the statute of limitation.

As conclusions of law the court found that the bondholders had no means of enforcing their bonds by legal action; that the district has not provided funds for the payment of its bonds and has not fulfilled all of the requirements of sections 3446 to 3493 of the Political Code, and has not given notice of the availability of funds to pay its bonds; that the statute of limitation has not run against bonds upon which no action has been brought; "That petitioners' prayer for writ of mandamus should be denied, but on application of petitioners or intervener a writ of mandate may be issued requiring and directing the payment of all bondholders the outstanding bond obligations of one maturity to be paid in full if funds are sufficient therefor before the payment of bond obligations of a later maturity, or if funds are not sufficient then the bondholders in that maturity shall be paid pro rata.

"That the bondholders of Reclamation District No. 784 are

entitled to payment from funds on hand in the bond fund of said district to the extent of moneys available in the order stated in the preceding paragraph.''

It is petitioners and appellants' theory that because, except as to their bonds, no action was commenced on the bonds maturing in 1930 and 1931, and no presentation or registration or demand for the payment thereof was made, the right of all such bondholders is barred by the statute of limitation, and hence, the funds available should be used to pay their bonds alone. The intervener asserts that the statute did not commence to run on his bond until there was money available in the bond fund to pay him.

It has been repeatedly stated as a general proposition that where an obligation of a governmental agency is payable out of a particular fund or in a particular way, the statute of limitation does not commence to run until the particular fund has been provided or the method pursued to provide such fund. (*Sawyer* v. *Colgan,* 102 Cal. 283 [36 P. 580, 834] ; *Hewel* v. *Hogin,* 3 Cal.App. 248 [84 P. 1002] ; *Bradley Co.* v. *Ridgeway,* 14 Cal.App.2d 326 [58 P.2d 194] ; *Freehill* v. *Chamberlain,* 65 Cal. 603 [4 P. 646] ; *Lincoln County* v. *Luning,* 133 U.S. 529 [10 S.Ct. 363, 33 L.Ed. 766] ; 37 C.J. 849 ; 34 Am.Jur., Limitation of Actions, § 141; 43 Am.Jur., Public Securities and Obligations, § 348; 56 A.L.R. 830; 1 Bonds & Bond Securities, Jones, § 510; see *McGrath* v. *County of Butte,* 30 Cal.App.2d 734 [87 P.2d 381] ; *Ritter* v. *Franklin,* 50 Cal.App.2d 844 [123 P.2d 866] ; and *Moody* v. *Provident Irr. Dist.,* 12 Cal.2d 389 [85 P.2d 128].) On the other hand it has been stated that in respect to obligations payable out of the general tax fund as distinguished from a particular source or fund, the statute commences to run from the time of maturity. (See *Farwell* v. *San Jacinto etc. Irr. Dist.,* 49 Cal.App. 167 [192 P. 1034] ; *People* v. *Honey Lake Valley Irr. Dist.,* 77 Cal.App. 367 [246 P. 819] ; *San Francisco Savings Union* v. *Reclamation Dist.,* 144 Cal. 639 [79 P. 374] ; *Barnes* v. *Glide,* 117 Cal. 1 [48 P. 804, 59 Am.St.Rep. 153] ; *Schoenhoeft* v. *Board of Comrs. of Kearny County,* 76 Kan. 883 [92 P. 1097, 14 Ann.Cas. 100, 102, 16 L.R.A.N.S. 803] ; *Smythe* v. *Inhabitants of New Providence Tp.,* 253 F. 824; *Central Trust Co.* v. *Board of Commrs.,* 111 Kan. 104 [205 P. 1031] ; *Little* v. *Emmett Irr. Dist.,* 45 Idaho 485 [263 P. 40, 56 A.L.R. 822] ; *Miller* v. *Independent School Dist. No. 16,* 171 Okla. 136 [42 P.2d 125].)

The reasoning in the cases making the distinction is not

particularly helpful. Those announcing the special fund theory appear to be based on various theories. First there is the view that no cause of action accrues on the obligation until a fund for its payment has been provided because it is not payable until such fund is accumulated. That is tantamount . to saying that the time of payment is fixed by the time that the fund is to be provided, an obligation being imposed on the government agency to establish the fund. There is a difference between that theory and the view that the obligation is not payable at all unless a fund is provided. Such an obligation would be of little value if the government agency was not required to provide the fund. The statutory power to incur the obligation should carry with it the implicit duty to pay the obligation, and by taxation, as that is the chief source of the government's income. If the statute and instrument representing the obligation clearly indicate that it is not payable until the fund has been provided, it would follow that that was the time fixed for its payment. But where the statute or instrument merely states that the obligation is payable out of a particular fund or source of income or is based upon an established assessment or tax levy, there is not enough from which it may be implied that the obligation is not payable or that a cause of action does not accrue thereon until the fund has been provided, especially, where the instrument on its face states a certain date of maturity. In *Sawyer* v. *Colgan, supra,* the obligations were state Indian war bonds, and upon the wording of the statute it was concluded that the bonds were not payable until the state had provided funds not otherwise appropriated. No provision was made for raising money to pay the bonds by the act authorizing their issue. They were payable from money in the treasury not otherwise appropriated, but no method of taxation was fixed for supplying the treasury with funds not appropriated to some other purpose. Also the action was for a writ of mandate to compel the state controller to issue a warrant on the state treasury. Of course if there were no funds in the treasury to pay the bonds the court would not compel the issuance of a warrant, and during the time that condition existed, the statute of limitation would not run on that relief. Moreover, the court held in that case that the bondholder could not sue the state in the absence of a statute expressly authorizing it. The availability of a right of action on the bonds is hereafter discussed.

Likewise, in *Freehill* v. *Chamberlain, supra,* the proceeding was for mandamus to compel the treasurer to pay the bonds and during the time that had elapsed prior thereto no funds were available in the fund. The court held the statute would not run as to that action because such action would be unavailing. Clearly under such circumstances it would be. The court does state that:

"The contrary view would place it in the power of a municipality in many cases to avoid all payment of its debts, because, if by concert of action each officer should omit to perform his duty, the time consumed in compelling each to perform such duty might be made to consume all the period of the statute before the funds would reach the treasury." But there are available as will presently appear, other remedies. In the instant case the statute as it read at the time the bonds were issued (Pol. Code, § 3480) provided for the issuance of bonds in an amount equal to an assessment levied upon the lands in the reclamation district. All moneys collected from assessments and from the sale of lands for delinquent assessments and penalties are paid into the bond redemption fund. The lien for unpaid assessments upon which bonds have been issued continues until the bonds are paid and if any are unpaid after enforcement of the assessment a supplemental assessment shall be levied. Provision is made for calls for installments of the assessments on maturity of principal and interest. The bond recites that the principal and interest are payable upon a stated date; the bond is issued pursuant to section 3480 of the Political Code and is "based upon and secured by" the assessment levied. We find nothing in those provisions which makes the time of payment contingent upon there being money in the bond fund or that no action accrues until such fund is provided. On the contrary the maturity date is expressly fixed. Even if it be assumed that after the original assessment and any supplemental assessments have been fully enforced there are still insufficient funds to pay the debt and no other sources are available, yet it does not follow that the statute of limitation should not have run if a right of action has accrued whereby the bondholders' rights could be protected. In *Bradley Co.* v. *Ridgeway, supra,* the action was by a landowner to quiet title against an assessment and the court merely stated the rule generally with regard to special funds. The decision is rested primarily on estoppel and equity that the landowner may not quiet title against the

lien of a street improvement on the ground that the statute limitation had run on the bonds. (See *Ritter* v. *Franklin, supra.*) In *McGrath* v. *County of Butte, supra,* the court was concerned with whether limitation on a statutory liability applied to a mandamus proceeding to compel the levy of a tax. In *Ritter* v. *Franklin, supra,* the court refused to apply the rule.

Another consideration upon which the special fund theory seems to be based is, that where the bonds are payable from such a fund, the holder has no remedy until a fund has been provided or that the remedy is of no substantial value. In some of the cases the point is made that the government cannot be sued. ██ It is a fundamental principle in determining when the statute of limitation commences to run, that it runs from the time a cause of action accrues and it invariably accrues when there is a remedy available. (16 Cal.Jur. 488-490.) Hence, the pertinent inquiry is, the nature of the remedies available to the bondholder. ██ A bondholder may by mandamus proceedings compel the proper officials of the governmental agency to levy and collect the tax or assessment and to do the other things required by the statute under which the bonds were issued to obtain the funds necessary to pay the bonds. (See *Chapman* v. *Jocelyn,* 182 Cal. 294 [187 P. 962] ; *Meyer* v. *Porter,* 65 Cal. 67 [2 P. 884] ; *Pennington* v. *Baehr,* 48 Cal. 565; *People* v. *Honey Lake Valley Irr. Dist., supra; San Francisco Savings Union* v. *Reclamation Dist., supra; Barnes* v. *Glide, supra; Nevada National Bank* v. *Board of Supervisors,* 5 Cal.App. 638 [91 P. 122] ; *Hewel* v. *Hogin, supra.*) Of course, such an action would not lie to compel the disbursing officer to pay the bondholder from the bond fund if there was no money in the fund. It might be available to compel pro rata payment if there were some funds but insufficient in amount. However, if the reason the fund was depleted was that the steps required by statute to feed it had not been performed, performance could be compelled.

██ Assuming that in the instant case all of the things required to be done under the statute for the raising of funds has been done and there are insufficient funds available, still there is another remedy available. A cause of action on the matured bonds has accrued. In *Meyer* v. *City and County of San Francisco,* 150 Cal. 131, 135 [88 P. 722, 10 L.R.A.N.S.

110], in discussing the remedies available to the holders of bonds secured by special improvement assessments, this court said:

"But although no action could be maintained to recover a general judgment against the city for the money due on the bonds, and the complaint is insufficient to authorize a writ of *mandamus*, conceding that a *mandamus* suit to enforce payment of the bonds would lie against the city in any case, we think that the plaintiff may nevertheless maintain an action against the city on the bonds, not to enforce payment thereof, but to establish and perpetuate them as a claim upon the funds to be raised under the act, and to prevent the bar of the statute of limitations. At the time the action was begun but one day remained of the period of limitation. By the expiration of that period the plaintiff would have been barred forever of all right to enforce payment of the bonds, which the demurrer admits to be valid and unpaid. The delay was not the fault of the plaintiff. Circumstances might exist under which it would not be the fault of the defendant or its officers, and in which plaintiff could not force payment by *mandamus*,—as, for instance, if the officers, although exercising reasonable diligence, had been unable to collect the tax until after the period of limitation had run. In such a case the plaintiff would be practically without remedy if he could not maintain an action to prevent the running of the statute against him. Justice requires that he shall have some means of preventing his claim from becoming outlawed. No better or more appropriate remedy can be suggested than that of an action of the character above indicated.

"In this conclusion we are supported by the example of the federal courts in a somewhat analogous case. Those courts have no original jurisdiction to issue writs of *mandamus*. The writ can only issue after judgment and in aid of its enforcement and execution. . . . With respect to bonds which constitute an obligation against a portion only of the county or city, and which do not constitute a general obligation against such corporation, those courts found themselves in somewhat of a dilemma. The bonds in question there, as here, purported to be issued by the city, or county, respectively, but it was held that they did not constitute a general obligation against the obligor sufficient to authorize a general judgment thereon. In those courts, if no judgment could be obtained, there could be no *mandamus*, and a bondholder would be without remedy

therein to enforce his obligation. In this situation it was said 'the holder of these bonds cannot have any remedy in the federal courts unless he is entitled to recover a judgment thereon and to enforce such judgment, if necessary, by *mandamus*. . . . It seems to us that the provision that the bonds shall be issued in the name of the county implies a liability on the part of the county to be sued, so far as is necessary to give effect to the rights of the holders of the bonds. . . . This is to be effected by the nature of the judgment we render, which is not a personal judgment against the county, but only a judgment judicially establishing the plaintiff's debt.' (*Jordan* v. *Cass. Co.*, 3 Dill. 185, 13 F.Cas.No. 7517, p. 1088.) This case was followed by *Cass Co.* v. *Johnston*, 95 U.S. 360 [24 L.Ed. 416]; *Davenport* v. *Dodge Co.*, 105 U.S. 237 [26 L.Ed. 1018]; and *Mather* v. *San Francisco*, 115 F. 37 [52 C.C.A. 631]. The latter was an action upon some of the Dupont-Street bonds, of which the bonds in suit in this case at bar form a part. Upon similar reasoning we can say that the provision that the bonds here involved should be issued in the name of the city and county implies that the city and county can be sued when necessary to preserve the plaintiff's rights and prevent the bar of the statute of limitations, and that in such action a judgment can be given establishing the debt for that purpose." (See, also, *People* v. *Honey Lake Valley Irr. Dist.*, 77 Cal.App. 367 [246 P. 819]; *Farwell* v. *San Jacinto etc. Irr. Dist.*, 49 Cal.App. 167 [192 P. 1034]; *Curtis* v. *Rialto Irrigation District*, 44 Cal.App. 738, 739 [187 P. 117]; *Moody* v. *Provident Irr. Dist., supra;* and *Carpenter* v. *Glenn-Colusa Irr. Dist.*, 14 Cal.2d 338 [94 P.2d 345].) It is true that the judgment cannot be enforced by execution against the property of the district. (*El Camino Irr Dist.* v. *El Camino Land Corp.*, 12 Cal.2d 378 [85 P.2d 123]; *Clough* v. *Compton-Delevan Irr. Dist.*, 12 Cal.2d 385 [85 P.2d 126]; *Moody* v. *Provident Irr. Dist., supra.*) But it does not follow that the bondholder should not be required to obtain such a judgment. It is not a wholly idle gesture. It will prevent the running of the statute of limitation. Bondholders should not be permitted to stand idly by after their bonds mature. Their claim should be brought to the attention of the district and any questions of their right to recover settled. The district will be advised of the amount of bonds which must be met, there always being the possibility that

collection of some may never be pressed. The district is authorized to make a supplemental assessment if the original proves insufficient (Pol. Code, § 3480; see *Irvine* v. *Reclamation Dist. No. 108,* 24 Cal.2d 468 [150 P.2d 428]), and the existence of the necessity of such an assessment should not be indefinitely postponed by the failure of the statute of limitation to run. The statement in *Clough* v. *Compton-Delevan Irr. Dist., supra,* that judgment on the bonds would be futile apparently did not consider the statute of limitation. In *Moody* v. *Provident Irr. Dist., supra,* this court recognized that a judgment could be obtained, but concluded that obtaining the judgment would be idle inasmuch as the statute which provided for registration of the bonds with the treasurer, an endorsement thereon by him of failure to pay for lack of funds, and the giving of notice that funds were available when that event occurred (Stats. 1897, p. 254, § 52, as amended), was considered when accepted by the bondholder, as a new agreement tolling the statute of limitation. The same effect was given to such a statute in *County of Lincoln* v. *Luning, supra.* In *Carpenter* v. *Glenn-Colusa Irr. Dist., supra,* the court recognized that an action to obtain a judgment was proper to toll the statute if it were not for the registration provision in the irrigation district law making a new agreement which tolled the statute. The court said in commenting on the Moody case at page 340:

"It was therein pointed out that under section 52 of the California Irrigation District Act, registration of unpaid bonds or coupons amounts to a *new agreement,* in which the interest rate rises from 6 per cent to 7 per cent, and the statute of limitations is tolled, until such time as money becomes available to pay the obligations. It followed, *therefore,* that *no additional right would be gained by the entering of a money judgment,* which would be an idle and unnecessary act. Accordingly it was held that an action to recover such a judgment was improper." (Italics added.) A statute was enacted in 1935 (Stats. 1935, p. 994), which provided that when any bond or interest coupon payable from funds in the custody of the county treasurer is presented to him for payment and is not paid for want of funds, he must endorse thereon "Not paid for want of funds" with the date of presentation and a serial number indicating the order of presentation and stamp his name thereon. Bonds or interest coupons so endorsed are entitled to preference as to payment out of

the first money received by the treasurer properly applicable to the payment thereof in order of presentation. When money is received in the treasury applicable to the payment of such bonds or interest coupons, it is set aside for that purpose and notice thereof is given to the bondholder by registered mail. If there is no presentation for payment within thirty days after the mailing of the notice, the fund so set aside is applied to the payment of the unpaid registered bonds or coupons next in order. That act was amended in 1937 to include bonds payable from funds in the custody of the treasurer of a city or city and county as well as of a county. (Stats. 1937, p. 407.) Assuming that statute applies to the bonds here involved and constitutes an offer on the part of the Legislature to the bondholders that if they register their bonds the statute of limitation shall be tolled, and an acceptance of the offer is manifested by presentation for registration (see *Moody* v. *Providence Irr. Dist., supra*), it is doubtful that the Legislature intended that such offer should be open to holders of bonds or interest coupons upon which the four-year statute of limitation had run (Code Civ. Proc., § 337(1)), after the maturity date thereof before the registration statute was passed. At least the holder whose bond was four years overdue when the act was passed should present his bond for registration within a reasonable time after the act became effective. In the instant case none of the bonds above-mentioned have been presented for registration. The act does not specify any time in which the bondholder must present his bond for registration, but certainly the Legislature did not intend that the presentation could be delayed indefinitely after maturity. If such were the case no benefit would accrue from the presentation and registration with regard to the statute of limitation, because it would not run in any event if the registration statute were construed to be a self-operating stay on the running of the statute of limitation. The registration statute contemplates that bonds should be presented and registered thereunder to obtain the benefits. Obviously, the presentation to be effective should be made within four years after the maturity of the obligation of the bond or interest coupon.

Finally, the particular fund theory is sometimes based upon an analogy to a trust fund; that is, that the bond redemption fund is held in trust by the custodian thereof; that the offi-

cials of the public agency are trustees and are bound to perform their duties as trustees to comply with the statute in feeding the fund; that the statute of limitation does not commence to run until there has been a repudiation of the trust; and that a mere breach of the trust is not a repudiation. While the situation has some of the aspects of a trust relationship, it is fundamentally a contractual relation in which the maturity date is fixed for the payment of the bonds, and even though all of the statutory steps have been taken, a judgment may, as we have seen, be obtained on the obligation.

■ Summarizing what we have said, it is clear that mandamus is available if the officials do not perform their statutory duty, and such an action must be commenced at least within four years after maturity of the bonds, and possibly before, if the failure to perform occurs before that time, and under such circumstances an action may be commenced within four years after maturity of the obligation of the bond, and a judgment recovered thereon. It must necessarily follow that in any event the statute of limitation will have run against the obligation unless an action be commenced within four years after maturity of the bonds, unless the bonds are registered as provided for in the statute of 1935. (Stats. 1935, p. 994.)

■ In the instant case the bonds accruing in 1930 and 1931, except those held by petitioners are barred by the statute, hence, petitioners are entitled to have the funds on hand applied to the payment of their bonds. Likewise, the intervener's bond maturing in 1934, is barred.

For the foregoing reasons the judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.