**UNITED STATES v. HIRSCH et al.**

No. 276, Docket 22703.

United States Court of Appeals
Second Circuit.

Argued June 1, 1953.

Decided July 13, 1953.

J. Edward Williams, Acting Asst. Atty. Gen., Adrian W. Maher, U. S. Atty., New Haven, Conn., Harry T. Dolan, Sp. Asst. to the U. S. Atty., Brooklyn, N. Y., and Roger P. Marquis and John C. Harrington, Department of Justice, Washington, D. C., for the United States of America.

Frederick H. Wiggin, John E. Ecklund and Catherine J. Tilson, New Haven, Conn. (Wiggin & Dana, New Haven, Conn.), for Hirsch.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

### I. *The Government's Appeal:*

■ 1. Hirsch was permitted to testify, before the Committee, over objections by the government, about statements made by United States government officials bearing on the value of the property. Whether, as the government contends, this testimony was hearsay—because the statements were *ultra vires*—we need not consider. For there was sufficient other competent evidence on this matter to sustain the Committee's finding of value, and as there is no indication that the Committee gave any weight whatever to the alleged hearsay, we conclude that they ignored it.

■ 2. The government argues that the Committee erred in finding that prospective purchasers would have assumed that the two-year lease would be consummated and would in all probability be renewed for an additional three years. A majority of the court holds as follows: (a) This finding was not "clearly erroneous."[4] (b) Moreover, the Committee's Report states that the Committee had viewed the premises and, "having considered the evidence," had made this finding: "The fair market value of the premises * * * was $3,100,000." The Committee heard oral testimony of experts which amply justifies this finding. Therefore it matters not that the Committee also heard the evidence concerning the lease, even supposing, *arguendo,* that the Committee could not reasonably infer from that particular evidence the value fixed by the Committee. The price in the contract with Hirsch was some evidence of value, but not conclusive; the Committee could properly conclude that by this contract Hirsch got a bargain in price.[5]

The writer of this opinion dissents for this reason: He thinks it would not have been at all reasonable for purchasers to assume that the lease would, in all probability, be renewed for three years. Were it not clear that the Committee gave weight to this assumption, he would hold that presumably the Committee had ignored it, and had relied solely on the oral expert testimony. But the Committee's Report is so worded as to suggest that the Committee did largely rely on that assumption. Accordingly, the writer would remand with directions that the case be again referred to the Committee to determine what valuation it will reach without regard to that assumption.

### II. *Hirsch's Appeal:*

■ 1. Hirsch argues that the deposit was not in accord with the Declaration-of-Taking Act, 40 U.S.C.A. § 258a.[6] We agree, since the deposit was made after judgment. But we consider that contention of no significance. For we have here the ordinary case where, without recourse to a statute, a judgment-debtor tenders, by a deposit in court, with leave of the court,

4. In taking into account the way a purchaser would be influenced as to value by the facts concerning the lease, the Committee did not base its valuation on loss of potential profits.

5. In oral argument on this appeal, government counsel conceded that, aside from the evidence as to the lease, the record evidence is such that, had the Committee said nothing about the lease, the appeal would have been frivolous.

6. So far as pertinent, it reads as follows: "In any proceeding * * * under the authority of the United States for the acquisition of any land * * * the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands * * *. Said declaration of taking shall contain or have annexed thereto * * *. (5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken. Upon the filing said declaration of taking and of the deposit in the court * * * of the amount of the estimated compensation stated in said declaration, title * * * shall vest in the United States of America * * * the * * * judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum * * * on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. * * * "

for the benefit of the judgment-creditor, all or part of the amount due under the judgment, at the same time appealing. The deposit, whether or not the judgment-creditor draws it down, is deemed payment *pro tanto*. If a judgment is reversed on appeal, the judgment-debtor becomes entitled to restitution of money he paid on the judgment; he has that right whether or not he asserted that he had when he paid the money. See Restatement of Restitution § 74.

2. Hirsch contends, however, that the deposit here was not an effective tender because it was neither "required by law" nor "permitted by statute" within the meaning of Fed.Rules Civ.Proc. rule 71A(j), 28 U.S.C.A.[7] We think a reading of that Rule shows that it did not intend to apply to anything except a deposit before judgment and that therefore it had no application here.

3. Hirsch also urges that the deposit was ineffective because it was a tender of the principal of the judgment, leaving the accrued interest unpaid. But, as we think the trial judge indicated in his opinion on Hirsch's motion, the deposit applied first to such accrued interest, and the balance went to pay a part of the principal. Interest on that part of the principal ceased to accrue from the date of the deposit.

4. Finally, Hirsch argues that, for the following reasons, the deposit did not serve as an effective tender because it was coupled with an explicit reservation of a right to restitution, if the government should win on appeal from the judgment:[8]

"An owner in the position of Hirsch runs undue risk if he withdraws a deposit of $1,090,000, in the teeth of the government's claim that he is not entitled to a penny of it, with the obligation of returning it with 6% interest. No investment of the money which might yield 6% will be both safe from depreciation of principal and at all times available for liquidation on short notice. *This is one of the reasons why Hirsch has not and cannot move for withdrawal of the deposit. The other is that if he should make a withdrawal and invest the money in any but property 'similar or related in service or use' (Sec. 112(F) (3) (B), I.R.C. [26 U.S.C.A. § 112(f) (3) (B)]) to that in litigation, he will be subjected to a heavy penalty in income taxes, since the full amount of the award would be capital gain. To avoid such taxation Hirsch must invest in such 'similar' property within the limited time fixed by law (Sec. 112(F) (3) (B) (i), I.R.C.) namely, within 'one year after the close of the first taxable year in which any part of the gain * * * is realized. * * *' Such a tax could amount to 26% of the award. It would be unreasonable to suggest that he might buy similar property, and be ready to liquidate it at any time to satisfy a judgment with 6% interest." We see no merit in those arguments. Many a judgment-creditor to whom a tender is made by his judgment-debtor faces a similar perplexity if the debtor appeals. The chief cause of the perplexity lies in the Revenue Code. Perhaps Congress can be induced to remove the difficulty by amending the Code. The courts lack power to do so.

Affirmed on the government's appeal and on Hirsch's appeal.

7. This Rule reads as follows: "The plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain; and, although not so required, may make a deposit when permitted by statute. In such cases the court and attorneys shall expedite the proceedings for the distribution of the money so deposited and for the ascertainment and payment of just compensation. If the compensation finally awarded to any defendant exceeds the amount which has been paid to him on distribution of the deposit, the court shall enter judgment against the plaintiff and in favor of that defendant for the deficiency. If the compensation finally awarded to any defendant is less than the amount which has been paid to him, the court shall enter judgment against him and in favor of the plaintiff for the overpayment."

8. What follows is quoted from his brief.