**F. E. THIBODO, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 1030.**

United States District Court
S. D. California, S. D.

March 28, 1955.

Roscoe R. Hess, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., by Albert N. Minton, Special Attorney, Lands Division, Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

A pre-trial order entered on March 28, 1955 (which is appended to this opinion as Exhibit A) called for determination by the Court, in advance of trial, of certain legal principles which in the opinion of court and counsel would determine the course of the future litigation. This is one of the most beneficial uses of the pre-trial procedure.[1]

## I

### The Factual Background

A consideration of the problems presented requires a statement of the prior proceedings which culminated in a decision of the Court of Appeals determining certain questions which are the law of the case.

On November 23, 1948, plaintiff instituted his original action claiming damages for deprivation of rights founded upon the Constitution of the United States.[2] Plaintiff was the owner of certain street improvement bonds issued to him by the Treasurer of the City of National City, California, on August 24, 1931, under the California Improvement Act of 1911. The bonds were payable in ten annual installments beginning January 2, 1932.[3] At the time of the institution of the action and ever since, the bonds were a lien on certain lands within the city limits of National City, California. On February 9, 1943, the United States instituted an action in the District Court for the Southern District of California to condemn lands which included the lands on which the bonds were a lien.

A Declaration of Taking was filed on the same day and the Court made an Order of Immediate Possession pursuant to it.[4] The plaintiff was not made a party to the action and was not served with summons or complaint in it.

On November 23, 1948, plaintiff filed an action in this court seeking judgment against the United States in the amount of the principal sums on the bonds. He also sought a declaration that each bond constituted a lien upon the property described until the amounts are paid. The total amount sought to be recovered is less than $10,000, the plaintiff having waived any amount in excess thus bringing the action within the Tucker Act already referred to.[5]

A Motion to dismiss was sustained by the writer upon the ground that the plaintiff was not a necessary party to the condemnation proceedings, that the United States did not have notice of the

1. United States v. Fallbrook Public Utility District, D.C.Cal.1952, 108 F.Supp. 72. The pretrial order appears in Appendix to the opinion on the merits in the same case, at 109 F.Supp. 43 et seq. See, Yankwich, Chief Characteristics of Federal Trial Procedure in Civil Cases, D.C.1952, 12 F.R.D. 278.

2. 28 U.S.C.A. § 1346(a) (2).

3. Cal. Streets and Highways Code, § 6400 et seq.

4. 40 U.S.C.A. § 258a.

5. 28 U.S.C.A. § 1346(a) (2).

claim of lien by plaintiff by reason of the bonds when it instituted the action and that for these reasons the complaint stated no claim against the United States.[6]

Reversing the case, the Court of Appeals held that while under California law, a lienholder, such as the plaintiff, was not a necessary party,

"his interest must be protected in some practical manner".[7]

The Court, however, held that plaintiff should show *by proper amendments* to his complaint that he had exhausted his remedies in the State Courts. Certain statements from the Court of Appeals' opinion may be quoted as bearing upon the legal problems involved. They are as follows:

"Under the California law, a lienholder has a present proprietary interest in the subject matter of land sought to be taken by eminent domain proceedings which confers a right to have such interest considered and determined in said action. City of Vallejo v. Superior Court, 1926, 199 Cal. 408, 249 P. 1084, 48 A.L.R. 610; Calif.Code Civ.Proc. (1949) §§ 1244, subd. 2, 1246, 1246.1, 1248. See Harrington v. Superior Court, 1924, 194 Cal. 185, 228 P. 15. Section 1248, subd. 8, of the California Code of Civil Procedure provides that if the amount of a lien is not due at the time of entry of the judgment, the amount may be deducted from the judgment with the lien continuing until the indebtedness is paid. This section is held applicable to street improvement liens. City of Los Angeles v. Superior Court, 1934, 2 Cal.2d 138, 39 P.2d 401. If the lien is due and overdue, the security holder is entitled to have the money awarded in the condemnation proceedings applied to the payment of his claim. City of Vallejo v. Superior Court, supra. The very purpose

of the statute is to prevent a situation wherein the condemnor will pay the full value of the land, and thereafter will be forced to pay again to holders of liens on the land. City of Los Angeles v. Superior Court, supra. * * *

"The California courts recognize the doctrine that when land is taken for public use, the money awarded for such land remains, and is to be considered as, representing the land in respect to all rights and interests relating thereto. The money is applied to discharge the liens upon the land in accordance with the rights of encumbrances in respect to the land. Los Angeles Trust & Savings Bank v. Bortenstein, 1920, 47 Cal.App. 421, 190 P. 850. The lien claimant may follow the fund in order to subject it to his claim even if it has been paid out to others. Rose v. Conlin, 1921, 52 Cal.App. 225, 198 P. 653.

"Plaintiff should be given the opportunity to amend his complaint to show that he has exhausted the state remedy or that this relief is not available to him, or that pursuit for relief through the state courts would be fruitless. When appellant has taken proper steps as just suggested he may then state his claim for relief based upon a deprivation of constitutional rights, by virtue of the 'taking' of his right to have his bonds discharged through foreclosure of the lien upon the land. * * *

"The Government stresses its own assertion that plaintiff knew of the proceeding and therefore is estopped by laches from recovering in this action, but we find no admission of such fact in the pleadings. It may be that in the necessitous haste to get possession and title to the land in suit for navy use during the great

---

6. Rules 8(a) and 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A.

7. Thibodo v. United States, 9 Cir., 1951, 187 F.2d 249, 256.

war that the lienholder was overlooked and if so, he should not be deprived of his day in court to show, if he can, that the Government's action nullified his statutory right to enforce his claim, thereby depriving him of his constitutional right under the Fifth Amendment to the Constitution of the United States." [8]

■ Under California law, two remedies are provided for the lienholder,— (a) foreclosure by the City Treasurer [9] and (b) action to foreclose the bond which is a separate, direct and cumulative remedy.[10] As to these remedies, the Court of Appeals stated explicitly:

"Both of the above doors to recovery on his bonds were closed to the plaintiff when the United States exercised its power over the land in 1943. Mullen Benevolent Corp. v. United States, [290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192] supra."[11]

This statement cannot be questioned *as the Government is urging us to do* in this proceeding. The Court of Appeals was considering the sufficiency of the Complaint. While holding that the Complaint was deficient, it pointed to certain allegations which, if supplied, would warrant a trial on the merits. So doing, it referred to the remedies which were available to the plaintiff under the State law, had the condemnation not intervened. There is also good logic behind the conclusion of the Court of Appeals in this respect. For an action in condemnation is a forced sale.[12]

## II

### The Relief Sought Now

Be that as it may, these statements are a part of the law of the case and are

binding on us in determining the matters before us. In his amended complaint, the plaintiff has alleged certain facts, some of which are admitted in the pretrial order. It is conceded that so far as the lots upon which the bonds were owned by the plaintiff, the Government and the City entered into a stipulation fixing their value in the sum of $4,577, and that a judgment was entered on December 10, 1947, fixing that sum as the just compensation for their taking.

On October 3, 1944, $1,777 had been deposited in the Registry of the court to apply to these parcels. On December 10, 1947, the Court entered an Order of Distribution awarding the compensation to Ruth L. Rubin, Carl Levy and Norman George Levy, less taxes in favor of National City, the County of San Diego and the State of California. No money was withheld in the condemnation proceedings for the payment of plaintiff's bonds on which, on February 9, 1943, the sum of $10,664.84 was due.

The amended complaint alleged that the plaintiff has no remedy either against the property under the State law or the fund which the Court had distributed in the condemnation proceeding. It is his contention, therefore, that his only remedy is to sue *not* for the value of the bonds, *but for the value of the lots* covered by his lien which he asserts to be in excess of the amount stipulated, and for which he seeks judgment.

## III

### The Scope of Condemnation

■ By condemnation title to the property condemned is vested in the Government.[13] But only the final judg-

---

8. Thibodo v. United States, supra, Note 7, 187 F.2d at pages 256–257.

9. Cal. Streets and Highways Code, § 6500.

10. Cal. Streets and Highways Code, '§ 6610.

11. Thibodo v. United States, supra, Note 7, 187 F.2d at page 254.

12. Stockton Harbor Industrial Co. v. C. I. R., 9 Cir., 1954, 216 F.2d 638, 651.

13. Stockton Harbor Industrial Co. v. C. I. R., supra Note 12; Silberman v. United States, 1 Cir., 1942, 131 F.2d 715, 717; Eagle Lake Improvement Co. v. United States, 5 Cir., 1947, 160 F.2d 182, 184. Our Court of Appeals has held a condemnation to be a *sale* under the Revenue Laws, Hawaiian Gas Products v. C. I. R., 9 Cir., 1942, 126 F.2d 4, 5; Pedrotti v. Marin County, 9 Cir., 1946, 152 F.2d 829, 831.

ment can achieve this. However, under the statutes of the United States, the Government may take possession and title in advance of final judgment. As already stated, in the condemnation case from which this action springs, a Declaration of Taking was filed as of February 9, 1943, and an Order of Immediate Possession was issued. The effect of these acts on the part of the Government are of utmost importance in this case. It is therefore necessary to state that by the Declaration of Taking *the title* to the property is transferred *immediately* to the Government. Indeed, the statute itself states that

> "Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto." [14]

The subsequent proceedings for the ascertainment of the just compensation to be paid to the owner whether within the amount deposited or over it have nothing to do with the title. They are merely methods of providing for determining the just compensation, the deposit by the Government being, as it were, "earnest money" commensurate with the value which the Government has placed upon the property. There is also the promise to deposit in the registry of the court any additional funds necessary to make up the amount which will ultimately be found to be just compensation, should the award by the Court or jury exceed the deposit.[15] Judgment upon the Declaration of Taking is not a final judgment, which is appealable. However, the act of taking has finality so far as the immediate transfer of title to the United States is concerned.[16] As said by the Court of Appeals for the Second Circuit:

> "The purpose and effect of § 258a of Title 40 U.S.C.A. in a simple case of the taking of property to which a known owner has a clear title is to give the government possession at once and to give the owner immediate payment either in full or to the extent of the estimated value deposited. If the deposit turns out to be less than the actual value the owner is given the fair equivalent of immediate payment in full by additional compensation at the rate of six per cent of the difference between the amount deposited and the actual value."[17]

Transfer of title to the Government occurs upon compliance with the statute through declaration of taking, deposit and order of immediate possession.[18]

---

14. 40 U.S.C.A. § 258a. The title of the Act which is codified in this section read, in part:
"To expedite the construction of public buildings and works * * * by enabling possession and *title* of sites *to be taken* in advance of final judgment in proceedings * * * under the power of eminent domain." (Emphasis added.)

15. United States v. Miller, 1943, 317 U.S. 369, 380–381, 63 S.Ct. 276, 87 L.Ed. 336; Interest is allowed on excess of value from the time of the taking: United States v. Johns, 9 Cir., 1944, 146 F.2d 92, 93; United States v. Mahowald, 8 Cir., 1954, 209 F.2d 751, 752–753.

16. Catlin v. United States, 1945, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; Anderson v. United States, 5 Cir., 1950, 179 F. 2d 281, 283.

17. United States v. 53¼ acres of Land, 2 Cir., 1949, 176 F.2d 255, 258. See cases cited in Note 15. Cf. United States v. Hirsch, 2 Cir., 1953, 206 F.2d 289.

18. Danforth v. United States, 1939, 308 U.S. 271, 284–286, 60 S.Ct. 231, 84 L.Ed. 240; City of Oakland v. United States, 9 Cir., 1942, 124 F.2d 959, 963.

## IV

### Answers to Specific Questions

In the light of these principles, we answer some of the questions propounded in the Pre-trial Order.

### (A) Other Remedies.

The Court of Appeals having held that the only remedies available under the statute to enforce the lien under the bonds have been destroyed by the taking[19], we are at a loss to understand what other remedies are available. The California Improvement Act of 1911 affords no remedies to the bondholders against the City or the property owner except the foreclosure by the City or the bondholder. The entire theory of the Act is that the City is merely the instrumentality of the owners for making the improvements, the cost of which is charged to the owners proportionately and made a lien upon their property. Indeed, the statute provides that after the work has been completed, the owner has a certain period (30 days) during which, if he chooses, he may pay the assessment against his property, whereupon a discharge must be given to him by the Governmental agency.[20] According to the opinion of the Court of Appeals, the only two remedies available *have been destroyed* by the taking of the property. No other remedies have been pointed out by the Government. None can be found.

It follows, therefore, that the plaintiff is entitled to a ruling by this court that the only remedy available is the one he has chosen,—i. e., to seek to recover from the Government the actual value of the lots which were taken by the Government in a proceeding to which he was not a party and by the decree in which, according to the decision of the Court of Appeals, he is not bound.

### (B) Statute of Limitations.

We are asked to determine whether the claim of the plaintiff has been extinguished by the Statute of Limitations. Under California law, the limitation established for liens of the type represented by the bonds owned by the plaintiff is four years after the due date of the bond or of the last installment thereof, or prior to January 1, 1947.[21] After the expiration of the period, the right to sell is foreclosed.[22] These two provisions complement each other. The one limits the time within which a sale to satisfy the lien may be had. The other extinguishes the lien after the expiration of the time.[23]

The courts of California have been unable to find any constitutional infirmity in these statutory provisions, notwithstanding their retroactive effect.[24] By the specific provisions of the California Improvement Act of 1911, the amount of the assessment for which the bond is issued is a lien upon the property until the bond is fully paid.[25] The Government, by taking title in advance of the final judgment, destroyed the lien which the plaintiff had until the bond was paid. If that were the only implication of the condemnation action, it might well be argued that whatever right the plaintiff had was lost within four years after the action in condemnation was instituted. However, whatever may be the law when

---

19. Thibodo v. United States, supra Note 7, 187 F.2d at page 254.

20. Cal. Streets and Highways Code, § 5392.

21. Cal.Code of Civ.Procedure, § 330. The four year period for the lien is established by § 7240, Cal. Streets and Highways Code.

22. Cal.Civ.Code, § 2911.

23. Rombotis v. Fink, 1948, 89 Cal.App.2d 378, 201 P.2d 588; City of Los Angeles v. Ganahl, 1951, 108 Cal.App.2d 460, 239 P.2d 1; Elbert, Ltd. v. City of Long Beach, 1951, 108 Cal.App.2d 463, 239 P.2d 4; Harless v. Johnson, 1953, 116 Cal.App.2d 649, 254 P.2d 122; Elbert, Ltd. v. City of San Diego, 1953, 116 Cal.App.2d 660, 254 P.2d 98; Kipp v. Luberco, Ltd., 1953, 116 Cal.App.2d 656, 254 P.2d 150.

24. Anger v. Borden, 1951, 38 Cal.2d 136, 238 P.2d 976; Scheas v. Robertson, 1951, 38 Cal.2d 119, 238 P.2d 982; Harless v. Carter, 1954, 42 Cal.2d 352, 267 P.2d 4.

25. Cal. Streets and Highways Code, § 6446.

the Government *takes* property by other methods than condemnation, the fact ·is that in this instance the Government *resorted to condemnation.* Having taken title in advance of the final judgment, it became liable to those having an interest in the property for the payment of the just compensation.

The judgment awarding just compensation was entered on December 10, 1947. The present action was instituted November 23, 1948. Granted that the lien of the plaintiff was extinguished when the Government took possession in advance of the final judgment, the Government could not, by this act, affect the right of the plaintiff to apply the award representing the just compensation for the value of the property on which the bonds were a lien to the payment of the bonds. The fact that the lien expired in the meantime did not affect the plaintiff's right to receive in lieu of it the value of the property. The act of the Government in taking immediate title did not impair his "vested" right to be compensated for his proprietary interest in the property. Whether he was a necessary or proper party is unimportant. The Court of Appeals has held that he had an interest in the property which entitled him to participate in the proceeding in order that his interest be protected.[26] This being so, and the Government being responsible for the failure to make him a party or serve him with process in the case, is not in a position to claim that by such failure, it started, with the taking, the running of a statute of limitations against him. To hold otherwise would reward the Government for its own wrong. The Government is in the same position as one who, by injunction or other methods, prevents another from proceeding with an action.[27]

If the matter be approached from another angle, the conclusion must be the same. The filing of the Declaration of Taking transferred title to the Government. If the plaintiff were seeking recovery of the property on which the bond was a lien, it could well be argued that the transfer of the title started the running of the statute of limitations. But the plaintiff did not own the land involved in the condemnation action. He merely was the owner of the bonds which were a lien on it until paid. The filing of the Declaration of Taking destroyed this lien. The title to the property, *unencumbered* by any lien, passed to the Government. In lieu of it there arose the vested right to compensation. But this right was unliquidated. For at the time of the taking by the Government, the exact amount to be awarded had not been determined. That determination had to wait until the final judgment. Until such time, the right to receive compensation was a mere right "vested" though it is denominated by Section 258a of Title 40 U.S.C.A. Even the deposit by the Government of its estimate of the value, does not *automatically* pass to the owners of the property or those having an interest in it. They can only withdraw such portion of it as the Court might approve. Those having an interest in the property are under no obligation to ask for any portion of the deposit. For this reason, such deposit, even when it is of such character that it can be allocated to a particular owner, is not considered taxable gain in the year of deposit.[28] The final judgment changed the right to receive compensation into *an actual, enforceable claim or cause of action.* It is elementary that the statute of limitations does not begin to run *until there is a legally enforceable claim.*[29] It follows that the statute of

---

26. Thibodo v. United States, supra Note 7, 187 F.2d at page 256.

27. 54 C.J.S., Limitations of Actions, §§ 251–253; Elliott & Horne v. Chambers Land Co., 1923, 61 Cal.App. 310, 215 P. 99; Dillon v. Board of Pension Commissioners, 1941, 18 Cal.2d 427, 430, 116

P.2d 37, 136 A.L.R. 800; Marden v. Bailard, 1954, 124 Cal.App.2d 458, 465–466, 268 P.2d 809.

28. Nitterhouse v. United States, 3 Cir., 1953, 207 F.2d 618, 620.

29. 54 C.J.S., Limitations of Actions, § 108; Rose v. Conlin, 1921, 52 Cal.App.

limitations did not begin to run until December 10, 1947, when the final judgment awarding $4577.00 for the lots on which the plaintiff had a lien was entered. So his action was not barred at the time the present action was instituted on November 23, 1948, either by the California four-year statute [30] or by the Federal six-year statute.[31]

 The stipulation for judgment is not binding on the plaintiff because he did not enter into it, was not named a party to the action and was not served with process in it. To the contention of the Government that the Statute of Limitations began to run when the order of immediate possession was entered, the plain answer is that the Statute of Limitation was tolled until the money representing the just compensation came into being as a specific fund. 54 C.J.S., Limitations of Actions, § 113; Denver-Greeley Valley Irr. Dist. v. McNeil, 10 Cir., 1936, 80 F.2d 929, 931; Board of County Comm'rs of Oklahoma County, Okl. v. Board of Finance, 1938, 10 Cir., 100 F.2d 766, 769; Bradley Co. v. Ridgeway, 1936, 14 Cal.App.2d 326, 336, 58 P.2d 194; Irvine v. Bossen, 1944, 25 Cal.2d 652, 655, 155 P.2d 9. But even if it be assumed that a fund of $1,777 came into being with the taking, this did not represent the *full* money equivalent of the just compensation. And if we dated the limitation period from the date of this deposit we would have a situation in which a limitation would begin to run against a *part* of a claim when the *full* claim could not be known until the *final judgment*.

The illogic of such interpretation makes it evident that the only consistent view to take is that no Statute of Limitation began to run until *final* judgment.

(C) *Laches.*

 The Government has pleaded laches and has alleged that the plaintiff knew of the existence of the suit and should have appeared without service of summons and complaint on him. The contention is that had the plaintiff done so, the Government would have protected his interest and would not have paid out to the owner of the lots and the City the money which should have been allocated to the plaintiff's bonds.

Both under State and Federal law, laches is defensive matter, to constitute which there must be a showing of (a) delay and (b) detriment resulting from delay.[32] But aside from any problem of pleading, the question to determine is: Is the defense available to the Government in this case?

The opinion of the Court of Appeals states:

"The Government stresses its own assertion that plaintiff knew of the proceeding and therefore is estopped by laches from recovering in this action, but we find no admission of such fact in the pleadings. It may be that in the necessitous haste to get possession and title to the land in suit for navy use during the great war that the lien-holder was overlooked and if so, he should not be deprived of his day in court to show, if he can, that the Government's action nullified his statutory right to

225, 230–232, 198 P. 653; Irvine v. Bossen, 1944, 25 Cal.2d 652, 658, 155 P. 2d 9; Creedon v. Babcock, 4 Cir., 1947, 163 F.2d 480, 484; Barlow v. City Council of Inglewood, 1948, 32 Cal.2d 688, 694, 197 P.2d 721; McClellan v. Montana-Dakota Utilities Co., 8 Cir., 1953, 204 F.2d 166, 168.

30. Cal.Code of Civ.Procedure, § 330; Cal. Civ.Code, § 2911.

31. 28 U.S.C.A. § 2501. In a sense the money representing the just compensation was, *until actually paid*, in the

custody of the law. And the Statute of Limitations does not run as to money in such custody, 54 C.J.S., Limitations of Actions, § 256. The amount representing the money equivalent of just compensation *did not* become liquidated, that is, ascertained and "earmarked", as it were, for the payment of the value of the lots in question, until judgment for $4,775 was entered on stipulation.

32. Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816, 827–828.

enforce his claim, thereby depriving him of his constitutional right under the Fifth Amendment to the Constitution of the United States." [33]

The Court *was not* speaking about the availability of the defense of laches. It was commenting on the Government's contention that it may have been harmed by the delay and it stated that if this be so, the matter *did not* appear in the pleadings before it. The opinion was discussing the complaint *as it stood* and what might be necessary to raise other issues. So the statement *is not* the law of the case. Rightly. For the defense of laches is a creature of equity.[34] The present action,—one under the Tucker Act,—for redress against a wrong by the Government is purely legal[35] to which the defense of laches *does not* apply.

## V
### Conclusions on Legal Problems Propounded

In what precedes we have answered the fundamental legal questions which the pre-trial order propounded. In the light of this exposition of principles, we give separate answers to the specific questions propounded in the pre-trial order.

*Question 23:* Granting that upon the filing of the Declaration of Taking on February 9, 1943, the right guaranteed by the Fifth Amendment to the United States Constitution to just compensation attached to the property regardless of ownership, what is the effect of the Declaration of Taking upon the improvement bonds of the plaintiff?

*Answer 23:* The Declaration of Taking transferred title to the property on which the bonds were issued, relieved of the lien of the bonds.

*Question 24:* Was the lien of the plaintiff's bonds wiped out by the Declaration of Taking?

*Answer 24:* Yes. There remained only as stated in Section 258a of Title 40 U.S.C.A., the right to just compensation for the same which *vested* in the persons entitled thereto.

*Question 25:* Did the plaintiff have any remedies under the laws of the State of California that he could have pursued after the Declaration of Taking on February 9, 1943; and if so, what were they and were they adequate?

*Answer 25:* No. The Court of Appeals has stated in the opinion in the present case that the only remedies which the plaintiff had were destroyed by the taking.

*Question 26:* If the plaintiff had any adequate state remedies, did his failure to pursue them preclude him from bringing this action until he exhausted those remedies?

*Answer 26:* Search has failed to disclose any other remedies than those mentioned by the Court of Appeals. If the Government knows of any other remedies, they will have the right to call them to the attention of the Court at the trial.

*Question 27:* Is the defense of the Statute of Limitations set forth in paragraph V of the defendant's Answer to the Amended Complaint of the plaintiff, California Statutes of Limitation, a bar to plaintiff's recovery?

*Answer 27:* No.

*Question 28:* Is the defense of the Statute of Limitations set forth in paragraph VI of the defendant's Answer to

33. Thibodo v. United States, supra Note 7, 187 F.2d at page 257.

34. 54 C.J.S., Limitations of Actions, § 112; Austin v. Hallmark Oil Co., 1943, 21 Cal.2d 718, 734–735, 134 P.2d 777; Nealis v. Carlson, 1950, 98 Cal.App.2d 65, 68–69, 219 P.2d 56; Recovery Oil Co. v. Van Acker, 1950, 96 Cal.App.2d 909, 912, 216 P.2d 483.

35. United States v. Jones, 1889, 131 U.S. 1, 14, 9 S.Ct. 669, 33 L.Ed. 90; United States v. Sherwood, 1941, 312 U.S. 584, 588–591, 61 S.Ct. 767, 85 L.Ed. 1058; Lynn v. United States, 5 Cir., 1940, 110 F.2d 586, 588; Clay v. United States, 1954, 93 U.S.App.D.C. 119, 210 F.2d 686.

the Amended Complaint of the plaintiff, Federal Statutes of Limitation, a bar to plaintiff's recovery?

*Answer 28:* No.

■ *Question 29:* Does a party having an interest in land under condemnation and having knowledge of the condemnation action but not served therein, have such a duty to appear voluntarily as to preclude him from recovery of the value of his interest in any action brought by him following the distribution of the fund in the registry, under the circumstances that the condemnor has either actual or constructive knowledge of the existence of such party?

*Answer 29:* No. A condemnation proceeding is a purely legal proceeding. One who is not made a party to the action, as the Court of Appeals declared in this case, has no duty to appear personally and the Government which failed to make him a party cannot question his failure to appear.

*Question 30:* Is there any practical manner of protecting the interest of a party having an interest in property under condemnation, other than by service of process in the action, or by distribution to him of his share of the just compensation for the property taken?

*Answer 30:* I know of none. However, if the Government knows of any, it will be its duty to present it at the trial.

■ *Question 31:* Is a party holding a street improvement bond lien upon property under condemnation entitled to participate in the determination of what is the entire just compensation for the property taken?

*Answer 31:* Yes.

*Question 32:* Is an action under the Tucker Act one in which the equitable defense of laches can be raised?

*Answer 32:* No.

■ *Question 33:* Are the facts alleged in the Amended Complaint of the plaintiff a satisfactory explanation of any delay either in the filing of the instant action or in the matter of appearing in the condemnation action No. 172–SD, such as to meet the defense of laches?

*Answer 33:* Yes. There was no duty on the part of the plaintiff to appear in the condemnation proceeding even if he knew of its existence and the defense of laches is not available in a purely legal action such as the Tucker Act. The fact that the Tucker Act implies a waiver of sovereignty does not turn an action under it into an equitable one so as to make the defense of laches available. The cases cited in Note 35 show conclusively that the Tucker Act cannot be turned into an equitable proceeding by either side.

*Question 34:* Does laches constitute any defense to the claim of the plaintiff in excess of the amount of $4,577 referred to in paragraph of this Order?

*Answer 34:* No, for the reasons stated in the preceding answer.

■ *Question 35:* Do the provisions of Section 23 of the Improvement Act of 1911, providing that the lien of the assessment shall continue until it be discharged of record and the provisions of Section 63, to the effect that until paid, the amount of the bond is a lien on the property affected thereby, entitle the bondholder to claim compensation irrespective of any statute of limitations if his lien has never been paid?

*Answer 35:* Yes. Only from the date of the final judgment awarding the just compensation did any limitation period begin to run.

*Question 36:* Under the law and the Constitution of the United States as it existed on February 9, 1943, was the holder of a street improvement bond issued under the 1911 Improvement Act of the State of California, a necessary party to a condemnation case involving land upon which his bond was lien at the time the action was filed?

*Answer 36:* In view of the decision of the Court of Appeals in the instant case to the effect that the plaintiff had an interest to be protected and should therefore have been made a party, it is not material whether he was a necessary or proper party. Evidently, in the view of the Court of Appeals, the failure to make him a party gives him right to redress.

■ *Question 37:* Would the United States be prejudiced by the plaintiff establishing in this case, if he can so establish it, that the fair market value of Parcels 1, 2, 3, 4, and 11, in the Case No. 173–SD, and hence the just compensation payable for said parcels, on February 9, 1943, was a sum in excess of $4,577, the stipulated amount of just compensation paid for said parcels, to which stipulation the plaintiff was not a party?

*Answer 37:* The question is abstract and requires no specific answer. The discussion in this opinion and the answers to the preceding questions indicate that plaintiff is entitled to establish in this case the fair market value and just compensation for the parcels involved. As the Court of Appeals has held that the plaintiff should have been made a party to the action, and that his only remedies under state law were destroyed, any detriment that flows from the establishment of the just compensation in the present action is traceable to the Government's own fault. And it is a fundamental maxim of jurisprudence, which is embodied in California law that "no one can take advantage of his own wrong".[36] This is but a codification of the accepted maxim of jurisprudence recognized in Federal law,—*ex turpi causa non oritur actio* (From a base cause, no action arises.) [37]

The answers just given make it evident there are questions of fact which only a trial of the issues can determine. The case will, therefore, be placed upon the next setting calendar for final determination in the light of the stipulated facts contained in the Pre-trial Order and the legal conclusions announced in this opinion.

## APPENDIX A

### Order on Pretrial

The above entitled matter having come on for pretrial hearing before the Honorable Leon R. Yankwich on the 13th day of December, 1954, the plaintiff F. E. Thibodo being represented by his attorney Roscoe R. Hess, and the defendant United States of America being represented by Albert N. Minton, Assistant United States Attorney, and discussion of various matters and issues involved herein having taken place; ·

Now Therefore the Court makes the following pretrial order:

1. That the plaintiff is a native born citizen of the United States of America, and is now, and at all times herein stated has been, a resident of the County of San Diego, State of California. That the real property hereinafter described, and with respect to which vested rights of lien are in this complaint alleged in favor of the plaintiff, is situate in the said County of San Diego.

· That under and by virtue of Title 28, Section 1346, Subdivision (2) of the Judicial Code of the United States, Congress has duly conferred jurisdiction upon the District Court of the United States covering and embracing any court action against the United States, in an amount not exceeding $10,000, founded upon the Constitution of the United States, or upon any express or implied contract with the United States.

That under and by virtue of the said Acts of Congress, jurisdiction is conferred upon the United States District Court to grant Declaratory relief coextensive with the jurisdiction which is otherwise conferred.

That by virtue of the Acts of Congress, duly passed and adopted, and as contained within the Judicial Code of

36. Cal.Civ.Code, § 3517.

37. The "Florida", 1879, 101 U.S. 37, 43, 25 L.Ed. 898.

the United States, it is provided that any action which seeks an adjudication respecting liens upon real estate must be brought in the District where such property is situate.

That the Fifth Amendment to the Constitution of the United States provides in part that no person shall be deprived of his property without due process of law; nor shall private property be taken for public use without just compensation.

2. That subject to their deposit in court prior to the payment of any judgment in favor of the plaintiff, the said plaintiff, on the 24th day of August, 1931, became and now is the owner of those certain street improvement bonds, duly given, made and issued by the City Treasurer of the City of National City, California, under and in pursuance of the "Improvement Act of 1911," which said bonds are set forth and described in said Amended Complaint, and hereby referred to for further particulars; that the lien of such bonds was in full force and effect as to the respective properties covered thereby at the time of the institution in this United States District Court of that certain condemnation action, Case No. 172–SD, entitled United States v. 123.-466 acres of land, more or less, situate in the City of San Diego and the City of National City, County of San Diego, etc., et al.; that the Complaint in said Case No. 172–SD Civil, with its amendments, embraces the lands described in plaintiff's Amended Complaint filed herein;

(Nothing herein contained shall be deemed or taken as an admission by either party that the lien created by the bonds described in plaintiff's Amended Complaint on file herein was, or was not, extinguished by any thing or matter which took place or occurred in said Case No. 172–SD Civil, or by operation of law of the State of California, or otherwise, at any particular time thereafter, or at all.)

3. That on February 9, 1943, the defendant herein filed in said condemnation action its first and only Declaration of Taking; that said Declaration of Taking described the lands embraced in the plaintiff Thibodo's Amended Complaint herein; that on said date, the estimated compensation was deposited in the Registry of the Court and a Decree on Declaration of Taking was made and filed in said action;

4. That the plaintiff herein, F. E. Thibodo, was not named as a party defendant by his true name, either in the Complaint in said condemnation action, Case No. 172–SD Civil, so filed by the defendant herein, United States of America, or in the Summons issued thereon, or in the aforesaid Declaration of Taking filed therein, nor was the said F. E. Thibodo, plaintiff herein, named as the owner of any property mentioned and described in said Declaration of Taking; and that "F. E. Thibodo" does not appear in any of said documents, but there were named in the title of the Complaint in condemnation on file in said Case No. 172–SD Civil, numerous John Doe defendants; that said Complaint contains the following allegation, towit:

"That plaintiff has attempted to set forth herein the names of all persons or corporations interested in the lands herein described in Paragraph IV of this Complaint so far as it has been able to ascertain the same, but, notwithstanding such statement, all persons or corporations herein named are made parties to this proceeding generally to the end that there may be vested in the United States of America the fee simple title to the lands hereinbefore described, subject only to existing public utility easements.";

that plaintiff's Amended Complaint in said Case No. 172–SD Civil, contains the following allegation, towit:

"That the defendants, City of National City, a municipal corporation; City of San Diego, a municipal corporation; County of San Diego, a body politic and corporate; State of California, a corporation sovereign; Doe One to Doe Five Hundred, inclusive; One Doe Corporation, a corporation, to Twenty-five Doe Corporation, a corporation, in-

clusive; A Doe to Z Doe, inclusive, each as the Administrator of the Estate or Executor of the Will of One Doe, deceased, to Twenty-six Doe, deceased, inclusive, respectively; and Doe One Company, a co-partnership, to Doe Twenty-five Company, a co-partnership, inclusive, each claims some right, title, interest or lien to, in, or upon the property hereinafter described, or some part thereof, the exact nature of which such claim or claims is unknown to plaintiff."

(Nothing herein contained shall be taken as a bar to the contention of either of the parties hereto, that the plaintiff herein, F. E. Thibodo, was, or was not, named under a fictitious name as a defendant in said Case No. 172–SD Civil.)

5. That there was no written appearance filed by the plaintiff, F. E. Thibodo, herein, in said condemnation Case No. 172–SD Civil; that plaintiff herein, F. E. Thibodo, was not personally served with Summons in that case; that there was no publication of Summons therein;

6. That no portion of either principal or interest appertaining to the bonds of the Plaintiff, F. E. Thibodo, has ever been paid, nor has he ever received any compensation therefor;

7. That whatever right, title or interest was acquired by the United States of America, defendant herein, in and to the properties described in the Complaint of the plaintiff, F. E. Thibodo, herein, was acquired by virtue of proceedings had in connection with the said condemnation action No. 172–SD Civil, and not otherwise;

8. That on May 9, 1944, there was a consolidated hearing in this District Court involving matters incident to two condemnation suits filed by the Government, towit, Case No. 172–SD Civil and Case No. 230–SD Civil; that Case No. 172–SD Civil included the properties described in the plaintiff's, F. E. Thibodo's, Complaint, on file herein; that the reporter's transcript of that day discloses that the plaintiff, Frank E. Thibodo, ap-

peared as a witness at said consolidated hearing; that the testmony given by Mr. Thibodo was concerned with his knowledge of the area, the fact that he, as a contractor, installed the sewers in that area, and further testimony with respect to the general area and the subject of tide flow in that area; that plaintiff, F. E. Thibodo, further testified in those consolidated cases as to the value placed by him on certain parcels of land, all of which were the subject of condemnation in the second condemnation case mentioned, namely, No. 230–SD Civil;

(Nothing herein contained shall act as a bar upon plaintiff to show, if he can, by competent evidence, that none of the values testified to by plaintiff, F. E. Thibodo, had any relation to the property covered by said Case No. 172–SD Civil.)

9. That the plaintiff, F. E. Thibodo, will contend that he did not know there was such a consolidated hearing until the subject was brought to his attention after the commencement of this, his suit, against the Government;

10. That the record with respect to Case No. 172–SD Civil will show that on July 13, 1944, a jury verdict was entered fixing and determining the fair market value of, among other parcels involved therein, Parcel No. 8, consisting of Block 133, also designated as Parcel No. 22 on Record of Survey Map 1012; and, further, that the deficiency as to said Parcel No. 8, among others, was deposited into the Registry of the Court on February 1, 1945, and partially disbursed on February 2, 1945, and final disbursement of $7,000 was made on June 8, 1945;

11. That the record with respect to said Case No. 172–SD Civil will further show that, pursuant to stipulation (said stipulation being executed by the owners of record of the property, in propria persona, by the City of National City, The County of San Diego and the State of California, by their respective attorneys, and by the plaintiff therein, the United States of America, by its attorneys) and by a Disclaimer executed by Estelle C. Levi, as executrix of the estate of Edgar

B. Levi, deceased, and not otherwise, a judgment fixing compensation as to Parcels Nos. 1, 2, 3, 4 and 11 thereof, at the sum of $4,577.00, was entered December 10, 1947, of which said sum, the sum of $1,777.00 had, theretofore and on the 3rd day of October, 1944, been deposited into the Registry of said United States District Court in said Case No. 172–SD Civil;

12. That on December 10, 1947, the said District Court entered its order of distribution awarding said compensation to Ruth L. Reuben, Carl Levy and Norman George Levy, less taxes in favor of National City, the County of San Diego and the State of California;

13. That the defendant, United States of America, ever since the 9th day of February, 1943, the date of the filing of the Declaration of Taking in Case No. 172–SD Civil, as aforesaid, has claimed, and now claims, title to the lands described in plaintiff's Complaint, in fee simple absolute, free and discharged from any obligations to compensate plaintiff for his said bonds;

14. That in arriving at his decision herein, the Court may take due notice of the force and effect of Section 7240 of the Streets and Highways Code of the State of California, The Improvement Act of 1911, all appropriate laws of the State of California applicable to the facts pleaded, and the interpretations thereof by the Supreme and Appellate Courts of California;

15. That the plaintiff herein, F. E. Thibodo, does not concede that any jury finding in said Case No. 172–SD Civil, as mentioned herein, binds him with respect to the true value of the property as determinable upon condemnation;

16. That under the terms of the stipulation referred to in paragraph 11 hereof, page 6, the Government stipulated with said record owners to the effect that all liens and assessments were subordinated to the ownership of said record owners, and that the said record owners would hold the Government free and harmless by reason thereof;

17. That the issue as to the personal knowledge of the agents and attorneys for the Government concerning the existence of the plaintiff's bonds, if any, is preserved for evidence, pro and con, to be introduced by the respective parties hereto upon that issue;

18. That there has never been any withholding or deduction from the awards granted in condemnation in said Case No. 172–SD Civil, for the payment of plaintiff's bonds;

19. The amounts due on February 9, 1943 on the bonds of the plaintiff referred to in the Amended Complaint on file herein are in the total sum of $10,-664.08 as set forth in the Affidavit of C. W. Vansant, City Treasurer of the City of National City, dated February 7, 1949, and attached as Exhibit "A" to the Joint and Consolidated Motion to Dismiss, Motion to Strike, and Motion for More Definite Statement filed by the defendant herein on February 24, 1949, with respect to the original Complaint of the plaintiff and hereby referred to for further particulars.

20. The original Complaint of the plaintiff was filed on November 23, 1948, the Amended Complaint of the plaintiff on May 9, 1951.

21. The plaintiff has waived in open court, all recovery in excess of $10,000.

22. The plaintiff has not pursued any state remedies on said bonds, either in the courts of the State of California or before any administrative officer, or under any statute of the State of California.

\* \* \* \* \* \*

The following questions of law under the Amended Complaint of the plaintiff, the Answer thereto of the defendant, and the foregoing paragraphs of this Order, may be determined by the Court:

23. Granting that upon the filing of the Declaration of Taking on February 9, 1943, the right guaranteed by the Fifth Amendment to the United States Constitution to just compensation attached to the property regardless of ownership,

what is the effect of the Declaration of Taking upon the improvement bonds of the plaintiff?

24. Was the lien of the plaintiff's bonds wiped out by the Declaration of Taking?

25. Did the plaintiff have any remedies under the laws of the State of California that he could have pursued after the Declaration of Taking on February 9, 1943; and if so what were they and were they adequate?

26. If the plaintiff had any adequate state remedies, did his failure to pursue them preclude him from bringing this action until he exhausted those remedies?

27. Is the defense of the Statute of Limitations set forth in paragraph V of the defendant's Answer to the Amended Complaint of the plaintiff, California Statutes of Limitation, a bar to plaintiff's recovery?

28. Is the defense of the Statute of Limitations set forth in paragraph VI of the defendant's Answer to the Amended Complaint of the plaintiff, Federal Statutes of Limitation, a bar to plaintiff's recovery?

29. Does a party having an interest in land under condemnation and having knowledge of the condemnation action but not served therein, have such a duty to appear voluntarily as to preclude him from recovery of the value of his interest in any action brought by him following the distribution of the fund in the registry, under the circumstances that the condemnor has either actual or constructive knowledge of the existence of the interest of such party?

30. Is there any practical manner of protecting the interest of a party having an interest in property under condemnation, other than by service of process in the action, or by distribution to him of his share of the just compensation for the property taken?

31. Is a party holding a street improvement bond lien upon property under condemnation entitled to participate in the determination of what is the entire just compensation for the property taken?

32. Is an action under the Tucker Act one in which the equitable defense of laches can be raised?

33. Are the facts alleged in the Amended Complaint of the plaintiff, a satisfactory explanation of any delay either in the filing of the instant action or in the matter of appearing in the condemnation action No. 172–SD, such as to meet the defense of laches?

34. Does laches constitute any defense to the claim of the plaintiff in excess of the amount of $4,577 referred to in paragraph 11 of this Order?

35. Do the provisions of Section 23 of the Improvement Act of 1911 providing that the lien of the assessment shall continue until it be discharged of record and the provisions of Section 63 to the effect that until paid, the amount of the bond is a lien on the property affected thereby, entitle the bondholder to claim compensation irrespective of any statute of limitations if his lien has never been paid?

36. Under the law and the Constitution of the United States as it existed on February 9, 1943, was the holder of a street improvement bond issued under the 1911 Improvement Act of the State of California, a necessary party to a condemnation case involving land upon which his bond was a lien at the time the action was filed?

37. Would the United States be prejudiced by the plaintiff establishing in this case, if he can so establish it, that the fair market value of Parcels 1, 2, 3, 4, and 11, in the Case No. 172–SD, and hence the just compensation payable for said parcels, on February 9, 1943, was a sum in excess of $4,577, the stipulated amount of just compensation paid for said parcels, to which stipulation the plaintiff was not a party?